[No. E024026. Fourth Dist., Div. Two. Sept. 3, 1999.]

SAN BERNARDINO COMMUNITY HOSPITAL et al., Petitioners, v. WORKERS' COMPENSATION APPEALS BOARD and VICKIE McKERNAN, Respondents.

COUNSEL

Law Offices of Patrick E. Whalen, Michael Cristin and Regina A. Burhenn for Petitioners.

Vincent Bausano for Respondent Workers' Compensation Appeals Board.

Anne R. Parenzan for Respondent Vickie McKernan.

OPINION

GAUT, J.—In this case we are called upon to consider which of two policies designated by the Legislature will prevail when a party to a workers' compensation proceeding seeks to introduce evidence without having made the required pretrial disclosure to the opposing party. We have determined that the rulings of the workers' compensation referee (WCR), as upheld by the Workers' Compensation Appeals Board (Board), improperly allowed applicant Vickie McKernan (Applicant) to circumvent the disclosure requirements of Labor Code section 5502, subdivision (d)[1] by relying on the power to "develop the record" set out in sections 5701 and 5906. Accordingly, we will annul the order under review and remand for further proceedings.

STATEMENT OF FACTS

As this case involves a procedural issue, we need not summarize the facts in any detail. Applicant was employed as a respiratory therapist by respondent San Bernardino Community Hospital (Employer). She claimed benefits under the workers' compensation laws for injury to her psyche allegedly caused by her working conditions. Employer disputed her claim. As the parties could not reach agreement, the matter was scheduled to be heard and resolved by a WCR.

In the meantime, both sides had consulted experts for opinions to support their respective positions. For example, Dr. David Appleton, a psychologist,

---

[1]All subsequent statutory references are to the Labor Code unless otherwise specified.

concluded that Applicant's psychiatric disability (if any) was due to a preexisting disorder rather than to her job.

Applicant consulted with Dr. Ruth Purdy, licensed as a marriage and family counselor but not as a psychologist or medical doctor. Dr. Purdy believed that Applicant was psychiatrically disabled due to work stresses.

Pursuant to section 5502, subdivision (d), the parties were duly notified that a mandatory settlement conference (MSC) would be held on October 30, 1997. As no settlement was reached, subdivision (d)(3) of the statute required both parties to file a pretrial conference statement "disclosing witnesses." Applicant did not list any witnesses although Employer provided several names. However, Applicant had listed Dr. Purdy's reports dated February 3 and August 27, 1997, in her declaration of readiness, the document which triggered formal proceedings.[2]

Apparently Applicant failed to appear for trial on February 18, 1998, and the matter was continued until April 22. At that time, Applicant asked that the record be "reopened" to present "additional medical evidence through Dr. Purdy and to offer additional testimony through a witness not disclosed at the time of the MSC, witness Mr. Weinberger." Employer objected, but the WCR granted the request, also giving Employer additional time to prepare and to obtain supplemental reports for the purposes of rebuttal. It is this ruling which Employer assigns as the primary error.[3]

After the hearing, the WCR found that Applicant was disabled and that her disability arose out of her employment. Temporary disability and medical treatment were ordered, with issues regarding permanent disability reserved due to the WCR's dissatisfaction with the record.[4]

## DISCUSSION

Section 5502, subdivision (d)(3) provides that if the dispute over a claim is not resolved at the MSC, "the parties shall file a pretrial conference

---

[2]Employer did not object to the admission of these documents.

[3]In its petition, Employer also argued that Dr. Purdy, who apparently is not a licensed *psychologist*, was not qualified to give an opinion on the issue of disability. (See §§ 3209.3, 3209.8.) This issue was not raised in the petition for reconsideration and may be, and hereby is, deemed waived under section 5904. The fact that Employer may not have thought to inquire into Dr. Purdy's qualifications until shortly before this petition was filed does not excuse the tardy attack. We also note that it does not appear that the WCR relied heavily (if at all) on Dr. Purdy's opinion with respect to the *fact* of disability, which is the specific point on which a counselor not licensed as at least a psychologist is barred from giving an opinion by section 3209.8.

[4]We are not asked to consider the propriety of this ruling, which may become moot as a result of our decision.

statement . . . listing the exhibits and disclosing witnesses. Discovery shall close on the date of the mandatory settlement conference. *Evidence not disclosed or obtained thereafter shall not be admissible unless the proponent of the evidence can demonstrate that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference.*" (Italics added.)

The record does not suggest that Applicant had any sufficient excuse within the language of the statute. Although she asserts that Weinberger was a *rebuttal* witness, this is simply not true. Weinberger was called by Applicant as her first witness as part of her case-in-chief. As for Dr. Purdy's latest report, it was not even obtained until shortly before the first trial date in April 1998—almost six months after the MSC. Arguably Applicant might have found it reasonable to have obtained a more current report for trial, but the April 1998 report is far more detailed in its analysis and explanation of Applicant's condition *and its origin* than the brief earlier letters from Dr. Purdy. It is not just an update. In short, it is the type of report which Applicant should have obtained *before* the MSC, and the record reflects no good cause for her failure to have done so.

The purpose of the disclosure requirement in section 5502 is obvious: " 'to guarantee a productive dialogue leading, if not to expeditious resolution of the whole dispute, to thorough and accurate framing of the stipulations and issues for hearing.' " (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 685 [43 Cal.Rptr.2d 660], quoting from *Zenith Insurance Co.* v. *Ramirez* (1992) 57 Cal.Comp.Cases 719.)

In furtherance of this policy, the Board in *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 37 Cal.App.4th 675 applied section 5502, subdivision (d)(3) to bar testimony proffered by the employer on the crucial issue of whether it had made a timely rejection of the claim. The Court of Appeal upheld the decision.[5] On the other hand, the Board exhibited a more lenient view in favor of the employee in *County of Sacramento* v. *Workers' Comp. Appeals Bd.* (1999) 68 Cal.App.4th 1429 [81 Cal.Rptr.2d 266]. In that case, the applicant had submitted a medical report which clearly failed to comply with the applicable statutory requirements. After repeated objections by the employer which began well *before* the MSC, the applicant submitted a correcting supplemental report *after* the conference, and the

---

[5]Under section 5402, if an employer does not reject a worker's claim in timely fashion, there is a presumption that the injury is compensable. This presumption may only be rebutted by evidence obtained after the period in which rejection should have been accomplished.

WCR[6] admitted it, again over objection. Although the Board upheld this action, the Court of Appeal annulled the resulting order, holding that the Board erred when it "ignored . . . section 5502 and declared, without reasoning or authority, the [WCR] had discretion to admit [the] supplemental report." (68 Cal.App.4th at p. 1433.)[7]

This case is like *State Compensation Ins. Fund* and *County of Sacramento* in many respects, but it is unlike the latter case in one important respect. Here, the Board *has* furnished this court with reasoning and authority in support of its decision.

Section 5701 empowers the Board[8] to "cause testimony to be taken, or inspection of the premises where the injury occurred to be made . . . [or to] direct any employee claiming compensation to be examined by a regular physician." The statute on its face applies to the conduct of the original trial or hearing. Section 5906, applicable to proceedings on reconsideration, authorizes the Board to "grant reconsideration and direct the taking of additional evidence." Respondents argue that these statutes support the WCR's action in permitting the late report of Dr. Purdy to be introduced, and witness Weinberger to testify.

These statutes have been construed and applied in three recent cases which have been brought to our attention. First, in *Tyler* v. *Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 389 [65 Cal.Rptr.2d 431], the WCR ruled for the employer in a psychiatric injury case. The WCR believed that the employee was disabled and that the disability had been caused by his work. However, the WCR felt constrained to deny compensation because the employee had presented only the report of a neurologist rather than a psychiatrist or psychologist, even though the WCR noted that this was due to the apparent negligence of prior counsel.[9] The Board denied reconsideration, but the court, citing sections 5701 and 5906, held that the Board had the

---

[6]In some of the cases discussed in this opinion the hearing officer is described as a "workers' compensation judge," or WCJ, rather than a referee; the title was altered by statute in 1993. (§ 27.) We will use the term "WCR" throughout in the interests of consistency.

[7]As the court comments in *County of Sacramento*, the language of section 5502, subdivision (d)(3) defines the limits of the discretion which may be exercised by the WCR and/or the Board. The Legislature's reference to evidence which could not have been obtained earlier even with the exercise of "due diligence" implies some flexibility in determining when a party has acted reasonably and in good faith. However, as noted in *County of Sacramento*, the Legislature has carefully confined the exercise of discretion to the specified circumstances.

[8]In context, this includes the WCR who hears a case as the delegate of the Board under section 5309.

[9]The employee's new attorney had been unable to file a psychiatrist's report due to the lateness of his substitution and procedural bars to the preparation of new medical reports.

power to obtain further reports where the WCR had rejected the opinions of the employer's experts but was unable, on the state of the record, to make a finding in favor of the employee.[10] (56 Cal.App.4th at pp. 394-395.)

Next, in *McClune v. Workers' Comp. Appeals Bd.* (1998) 62 Cal.App.4th 1117 [72 Cal.Rptr.2d 898], the WCR found the opinions of the experts on both sides to be incomplete and unpersuasive. Following a petition for reconsideration by the employee, the WCR recommended that an independent medical examiner be appointed to render an opinion on the point left in doubt by the existing evidence—whether work-related trauma contributed to the employee's at least partially preexisting disability. However, the Board's view was that the employee had simply failed to carry his burden of showing that his injury arose out of his employment. The Court of Appeal ordered that the Board consider (or reconsider) whether to appoint an additional examiner to resolve the open question. In addition to citing *Tyler* and sections 5701 and 5906, the court noted that the workers' compensation laws " 'must be liberally construed in the employee's favor [citation] and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee.' " (62 Cal.App.4th at p. 1121, quoting *Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; see also § 3202.)

Finally, in *M/A Com-Phi v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1020, 1025-1026 [76 Cal.Rptr.2d 907], the Court of Appeal was faced with a situation in which the employer complained that its experts had not been provided with impeaching surveillance films of the employee. Giving the employer a pyrrhic victory, the court held that the matter had to be remanded so that the employer's medical experts could consider whether to modify their opinions in light of the films. However, citing *Tyler* and *McClune*, the court also ordered that the *employee* be allowed to further develop the record, perhaps to explain away the surveillance films.

*McClune* and *M/A Com-Phi* both follow *Tyler* in stating that to refuse to allow the further development of the record in the circumstances of the three cases would improperly interfere with the employee's due process rights. (See *Tyler v. Workers' Comp. Appeals Bd.*, 56 Cal.App.4th at pp. 394-395; *McClune v. Workers' Comp. Appeals Bd.*, 62 Cal.App.4th at p. 1121; *M/A Com-Phi*, 65 Cal.App.4th at pp. 1025-1026.) As noted above, *McClune* also relies on the policy of liberally construing the workers' compensation laws in favor of the employee.

---

[10]The Board had relied on provisions which appeared to limit the power to have an independent expert appointed. These technical provisions were held by the court not to abrogate the power under sections 5701 and 5906.

Neither *Tyler*, *McClune*, nor *M/A Com-Phi* discusses section 5502, subdivision (d)(3) or the relationship between that statute and sections 5701 and 5906. That is the issue squarely presented to us.

We conclude that the Board in this case abused its discretion when it allowed Applicant to introduce the latest report of Dr. Purdy and to present the testimony of witness Weinberger. The Board's power to develop the record cannot be used to circumvent the clear intent and language of section 5502, subdivision (d)(3).

*McClune* and *M/A Com-Phi* may be fairly easily distinguished from the case at bar. In *McClune*, the WCR found that none of the medical reports adequately discussed the crucial issue of whether the employee's job duties could have had an impact on his preexisting injury and thus contributed to his eventual disability. In *M/A Com-Phi*, the Court of Appeal's decision to permit the employer's doctors to reconsider their opinions in light of the surveillance films arguably changed the playing field so as to justify allowing the employee to make a new showing as well.[11] Neither case, therefore, controls the situation where the WCR ruled in favor of admissibility at the original hearing and neither clearly involves negligence or dereliction on the part of the employee.

*Tyler*, however, is in some respects closer to this case, and therefore more troublesome. In that case, the employee's previous attorney had failed to obtain a report by a qualified expert to support his claim of psychiatric injury. Hence, there was no competent evidence upon which the WCR could base a finding of compensable disability, although he was otherwise convinced that such a finding was justified. The opinion indicates that the WCR believed this failure to be inexcusable, but was simply reluctant to penalize the employee.[12] In other words, *Tyler* is not a case in which the WCR was unable to credit any of the reports, or felt that all were in some respects unhelpful or uninformed, or that issues remained unresolved. *Tyler* appears to be a pure example of the Board's use of its power to "develop the record" to bail out an employee whose previous attorney did not adequately prepare the case. It therefore appears to be very similar to this case, except that *Tyler* did not consider the tension created by section 5502, subdivision (d)(3).

---

[11]This conclusion may be questionable; it is at least generous towards the employee. Presumably the surveillance films, which are described as "impeaching," tended to suggest that the employee was falsifying or magnifying his claimed injuries. If that were the case, it is difficult to see why either equity or due process would require that he be given an opportunity to explain away his duplicity.

[12]See the comments by the WCR quoted at 56 Cal.App.4th page 392, making a point of explaining the technical reasons why the employee's " 'very competent subsequent attorney' " could not obtain a suitable report.

For this reason we need not flatly disagree with *Tyler* or with *McClune* and *M/A Com-Phi*. However, in our view the clear and explicit language of section 5502, subdivision (d)(3) should prevail over the more amorphous powers given by sections 5701 and 5906 where the former statute applies. We do not attempt to define the limits of the Board's power to request or develop additional evidence in the circumstances presented by, or similar to, *McClune* and *M/A Com-Phi*. However, when a party appears at trial and asks the WCR to permit the introduction of evidence which was not disclosed at the time of the MSC, the party must explain either why the evidence was not earlier available or why it could not have been discovered in the exercise of due diligence.

In so concluding, we are not unmindful of the reliance by the courts in *Tyler*, *McClune*, and *M/A Com-Phi* on the principles of due process and the construction of the workers' compensation laws in favor of the employee. We will explain why we do not find them controlling here.

The essence of due process is simply notice and the opportunity to be heard. (*Oberholzer* v. *Commission on Judicial Performance* (1999) 20 Cal.4th 371, 392 [84 Cal.Rptr.2d 466, 975 P.2d 663], and cases cited.) The two workers' compensation cases on which *Tyler* relied do not support the principle for which that case apparently stands—that due process requires that every indulgence be given to the employee and all efforts made to obtain evidence in support of a claim. *Fidelity & Cas. Co. of New York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1014-1016 [163 Cal.Rptr. 339] simply confirmed the parties' right to be informed of the issues to be heard, and to present supporting and rebuttal evidence, while *Kaiser Co.* v. *Industrial Acc. Com.* (1952) 109 Cal.App.2d. 54, 57-58 [240 P.2d 57] overturned the Board's refusal to allow the employer to obtain out-of-state evidence. Thus, both of these cases represent routine applications of the principles of due process.

■ The constitutional right to due process does not prohibit the enactment of reasonable rules of procedure or restrictions on evidence. (See *Washington* v. *Texas* (1967) 388 U.S. 14, 23 [87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019] at fn. 21; *Agard* v. *Portuondo* (2d Cir. 1997) 117 F.3d 696, 702.) It is also well established that restrictions on the introduction of evidence which arise, for example, from a party's failure to comply with discovery rules are not inherently repugnant to the Constitution. (See *Unger* v. *Los Angeles Transit Lines* (1960) 180 Cal.App.2d 172, 186-188 [5 Cal.Rptr. 71].) Furthermore, it is often said that the paramount concern of the due process clause is simply *fairness*. (See 2 Rotunda & Nowak, Treatise

on Constitutional Law (1992) § 17.8, p. 656.) There is nothing fundamentally inequitable in requiring a party to comply with established procedural rules which are designed to improve the overall fairness and efficiency of an adjudicatory procedure. ■ Applying the strict terms of section 5502, subdivision (d)(3) to Applicant does not deprive her of due process.

■ The second principle expressly noted in *McClune* is that of liberal construction in favor of the employee, as codified in section 3202. This principle extends to statutory construction as well as to factual determinations. (*Gross* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 397, 402 [118 Cal.Rptr. 609].) However, it does *not* extend to ignoring a statutory mandate which happens to work unfavorably to the employee. (See *Nuelle* v. *Workers' Comp. Appeals Bd.* (1979) 92 Cal.App.3d 239, 249 [154 Cal.Rptr. 707].)

■ In our case, the Legislature has provided for MSC's in workers' compensation matters and also explicitly provided for the preclusion of evidence which is not disclosed in accordance with section 5502, subdivision (d)(3). Doubtless an employee's case may be seriously damaged by the application of this statute. However, the Legislature did not limit its sanction to *employers*. Diligence and good faith are required of *both* sides.

It may be argued, as the Board (and probably the court) in *Tyler* felt, that it is unfair that an employee should lose his or her case due to the derelictions of counsel. However, the general rule is that the negligent acts or omissions of an attorney are imputed to the client under the law of agency. (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895 [187 Cal.Rptr. 592, 654 P.2d 775].) If the Legislature had intended to provide an exception, it could have done so, as it did in Code of Civil Procedure, section 473, subdivision (b).[13]

In this case, the Board's use of its undoubted powers under sections 5701 and 5906 improperly undercut the clear intent of section 5502, subdivision (d)(3). By using the former two statutes to afford relief from the disclosure requirements, the Board effectively pulled the teeth from the latter section. We agree that the Board may act to develop the record with new evidence if,

[13]That provision *requires* the court to grant relief from a default, default judgment, or dismissal if the party's attorney files a *mea culpa* affidavit of mistake or neglect. By its terms, however, it does not apply to other types of rulings as to which relief might be sought under Code of Civil Procedure section 473. (See *Tackett* v. *City of Huntington Beach* (1994) 22 Cal.App.4th 60, 65 [27 Cal.Rptr.2d 133], refusing to apply the "automatic relief" provision to the failure to file a tort claim with a public entity.) Instead, the provision applies only to the most immediately serious and final rulings.

for example, it concludes that *neither* side has presented substantial evidence on which a decision could be based, and even that this principle may be appropriately applied in favor of the employee. (See, e.g., *Adams* v. *Workmen's Comp. Appeals Bd.* (1971) 22 Cal.App.3d 214, 218 [99 Cal.Rptr. 269].) However, it abuses its discretion when it purports to exercise this power to relieve a party from the sanctions of section 5502, subdivision (d)(3) in the absence of a showing of statutory good cause.

Finally, we must briefly discuss Applicant's contention, supported by the Board, that Employer was not prejudiced by the ruling because the WCR gave it additional time to prepare to meet the unexpected evidence. However, the absence of prejudice cannot be the deciding factor. An opposing party might often be unable to show specific prejudice; alternatively, the WCR could virtually always obviate any possible prejudice by granting a continuance or scheduling further hearings. Such an approach would threaten to make section 5502, subdivision (d)(3) meaningless; that statute does *not* provide for the admission of undisclosed evidence simply because the opponent will not be prejudiced. Furthermore, as we have noted above, the statute is not designed solely to permit effective preparation for trial. An equally important goal is that both parties shall have fully prepared their cases at the time of the MSC so that realistic evaluations can be made by both sides and negotiations may have some hope of success. This policy is completely frustrated if a party appears at the MSC without having an informed view of the case.[14]

The order under review is annulled and the matter is remanded to the Board with directions to reconsider the issues of disability and/or causation in light of only the admissible evidence.

Hollenhorst, Acting P. J., and Ward, J., concurred.

---

[14]This comment presumes that a party who fails to submit a complete list of witnesses has simply failed to determine which witnesses should be called. A party who deliberately omits to list witnesses in the hope of "sandbagging" the other side has even less claim for lenience in the application of section 5502, subdivision (d).