[No. B129003. Second Dist., Div. Three. Mar. 27, 2000.]

JOHN KUYKENDALL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD AND STATE OF
CALIFORNIA SUBSEQUENT INJURIES FUND, Respondents.

COUNSEL

Lewis, Marenstein, Wicke & Sherwin and Michael B. Lewis for Petitioner.

John Rea, Anthony Mischel and Steven A. McGinty for Respondent State of California Subsequent Injuries Fund.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**KITCHING, J.—**

## I. INTRODUCTION

John Kuykendall (Kuykendall) seeks a writ of review after the Workers' Compensation Appeals Board (Board) reversed the workers' compensation administrative law judge (WCJ) and admitted evidence submitted by the State of California Subsequent Injuries Fund (SIF) after the mandatory settlement conference (MSC).

The issue presented is whether Labor Code section 5502, subdivision (d)(3)[1] precludes admission of previously undisclosed evidence after the MSC.[2] We hold that previously undiscovered evidence obtained and submitted after the MSC as rebuttal to unanticipated testimony at trial is admissible when necessary to accomplish substantial justice.

We remand for further hearing to allow Kuykendall an opportunity to respond to the evidence relied on by the Board.

## II. FACTUAL AND PROCEDURAL SUMMARY

On October 15, 1992, Kuykendall applied for disability retirement through Los Angeles County Employees' Retirement Agency (LACERA). He retired on a disability pension in 1993.

On September 20, 1994, Kuykendall filed an application for benefits from the SIF pursuant to section 4751.[3] The application stated he had a preexisting permanent disability as follows: "back (7/4/71), knees."

---

[1] All references to statutes hereafter are to the Labor Code unless otherwise indicated.

[2] Section 5502, subdivision (d)(3) cuts off discovery at the MSC unless good cause is shown why the evidence could not have been discovered prior thereto. It states: "If the claim is not resolved at the mandatory settlement conference, the parties shall file a pretrial conference statement noting the specific issues in dispute, each party's proposed permanent disability rating, and listing the exhibits, and disclosing witnesses. Discovery shall close on the date of the mandatory settlement conference. Evidence not disclosed or obtained thereafter shall not be admissible unless the proponent of the evidence can demonstrate that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference." (*Ibid.*)

[3] Section 4751 provides in part as follows: "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the

An amended findings and award found that Kuykendall had a previous permanent disability of 25 percent, he had sustained industrial injuries resulting in a permanent disability of 85 percent, and his overall permanent disability was 96.3 percent.

Kuykendall was awarded SIF benefits, but these benefits were to "be reduced to the extent of any monetary payments received by the employee, from any source whatsoever, for or on account of [a] preexisting disability . . . provided by Labor Code Section 4753."[4]

On or about October 31, 1996, the State Compensation Insurance Fund, the paying agency for SIF, wrote Kuykendall informing him that it would not be paying him any SIF benefits because of "excessive credits and debit accumulations." Worksheets attached to the letter indicated SIF was claiming an offset for the disability retirement compensation paid by LACERA.

Kuykendall filed a petition for a hearing "for clarification" of the claimed credit.

The WCJ held an MSC on March 31, 1998, with regard to the claimed credit.

The only exhibit identified by SIF at the MSC regarding credit was a letter dated June 20, 1996, from LACERA confirming that Kuykendall had elected disability retirement rather than regular service retirement.

The WCJ held a trial on May 19, 1998, and the June 20, 1996 letter from LACERA and the worksheets, among other exhibits, were admitted into evidence.

At the trial, Kuykendall testified that after the 1971 injury, he had low-back surgery. He returned to work after three months. He stopped working on or about January 10, 1992, due to neck pain, severe headaches, and right shoulder pain. He was not sure what body parts he listed on the disability retirement application he submitted to LACERA.

---

combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article . . . ."

[4]Section 4753 provides in part as follows: "Such additional compensation is not in addition to but shall be reduced to the extent of any monetary payments received by the employee, from any source whatsoever, for or on account of such preexisting disability or impairment . . . ."

After the trial, the WCJ gave the parties until June 22, 1998, to file briefs, at which time the matter would stand submitted.

In his posttrial brief, Kuykendall argued he was not granted disability retirement because of his 1971 back injury. Rather, the disability retirement was granted on the basis of his neck and shoulder injuries as well as his headaches. In its brief, SIF contended that Kuykendall's disability pension contained a component attributable to his 1971 back injury and noted that Kuykendall was unable to recall at trial whether he listed a lower back injury on his application. The SIF attached new evidence which consisted of the LACERA file containing the disability retirement application stating that Kuykendall's disability was due to *back*, neck, and right shoulder injuries and LACERA's evaluation report finding Kuykendall was permanently incapacitated based, inter alia, on his cervical and lumbosacral spine conditions. SIF had subpoenaed these records after the hearing on May 19, 1998. Based on the additional evidence, the WCJ found that Kuykendall's disability retirement was granted, in part, due to his lumbosacral problems. The WCJ found that SIF was entitled to a credit equal to 25 percent of the amount Kuykendall was receiving from LACERA.

Kuykendall filed for reconsideration, contending, inter alia, that the WCJ's decision was based on inadmissible documents that were not introduced into evidence. Thereafter, SIF wrote the WCJ stating that its posttrial brief had requested addition of LACERA records to the record for purposes of clarification.

The WCJ rescinded his order and filed an amended decision finding that SIF had failed to carry its burden of proof, that the WCJ had improperly considered the documents appended to the posttrial brief, that SIF was not entitled to credit based on the evidentiary record at the hearing, and that no one asked and no one was given time to submit additional evidence.

SIF petitioned for reconsideration contending the WCJ had a duty to develop the "evidentiary record to enable a complete adjudication of the issues [as] is consistent with due process," citing *Tyler v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 389, 394 [65 Cal.Rptr.2d 431]; *M/A Com-Phi v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1020 [76 Cal.Rptr.2d 907]; and sections 5701 and 5906.

The WCJ filed a report on reconsideration. It recommended that the Board deny the petition because SIF made no request at the hearing to keep the record open for additional evidence which he would have seriously considered, did not represent that SIF had evidence to supplement the record, and

admitted in its trial brief that it subpoenaed the LACERA records after the hearing, which it had no right to do, as discovery is conducted before trial, not after. Moreover, SIF offered no excuse for not obtaining the records before the trial.

The Board granted reconsideration, reversed the WCJ, and reinstated his original decision. The commissioners opined that because Kuykendall had testified that he did not remember what body parts he had put on the application, on which SIF's credit right hinged, the WCJ had a duty to develop the record on that issue. The Board did not discuss the discovery cutoff mandated by section 5502, subdivision (d)(3).

Kuykendall petitioned for reconsideration contending that section 5502, subdivision (d)(3) precluded admission of the LACERA records after the MSC.

The Board denied Kuykendall's petition for reconsideration with an opinion discussing again the WCJ's duty to develop the record. The commissioners did not specifically discuss Kuykendall's argument that section 5502, subdivision (d)(3) precluded admission of the LACERA records. Kuykendall then filed a petition for writ review with this court, contending the Board's decision was contrary to section 5502, subdivision (d)(3), and the duty to develop the record should not undermine that statute when no good cause was shown.

This court denied review. Kuykendall petitioned the Supreme Court, which directed this court to grant review. This court requested amicus curiae briefs from California Applicant's Attorneys Association and California Workers' Compensation Institute, but neither has responded.

### III. DISCUSSION

#### A. *Standard of Review.*

■ The Board's conclusions on questions of law do not bind this court. (*Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864-865 [101 Cal.Rptr. 105, 495 P.2d 433]; *Save Mart Stores v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 723 [4 Cal.Rptr.2d 597]; *Klee v. Workers' Comp. Appeals Bd.* (1989) 211 Cal.App.3d 1519, 1523 [260 Cal.Rptr. 217].) Because the issue here is the applicability of section 5502, subdivision (d)(3) and the Board's duty to develop the record, this court applies a de novo standard of review.

B. *Subsequent Injury Fund.*

■ "The purpose of the subsequent injuries legislation is to encourage the employment of handicapped persons by providing for 'additional compensation to be paid from a fund (rather than by the employer or his workmen's compensation insurance carrier) to the already handicapped worker who sustains an industrial injury which causes increased permanent disability.' " (*Subsequent Injuries Fund v. Industrial Acc. Com.* (1963) 217 Cal.App.2d 322, 327 [31 Cal.Rptr. 508].)

To prevent a double recovery of benefits, the SIF is entitled to a credit for any other disability benefits a worker receives for a preexisting disability, with some exceptions not pertinent here. (*Subsequent Injuries Fund v. Industrial Acc. Com., supra,* 217 Cal.App.2d at pp. 329-330, 332.) Thus, the additional compensation paid by SIF is "reduced to the extent of any monetary payments received by the employee, from any source whatsoever, for or on account of such preexisting disability[.]" (§ 4753.)

C. *The Board Has a Statutory Duty to Develop the Record.*

■ Based on the constitutional mandate to accomplish substantial justice, the WCJ has a duty to develop an adequate record. (See Swezey, Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 1.9, pp. 6-7; *id.* (Cont.Ed.Bar 1999 supp.), § 8.27, at p. 176; and see *Tyler v. Workers' Comp. Appeals Bd., supra,* 56 Cal.App.4th at pp. 392-394; *McClune v. Workers' Comp. Appeals Bd.* (1998) 62 Cal.App.4th 1117, 1120 [72 Cal.Rptr.2d 898]; *M/A Com-Phi v. Workers' Comp. Appeals Bd., supra,* 65 Cal.App.4th at p. 1025.)

Article XIV, section 4 of the California Constitution mandates that the workers' compensation law shall be carried out ". . . to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character . . . ."

To implement that mandate, the Legislature enacted sections 5701 and 5906.[5] Section 5701 states: "The appeals board may, with or without notice to either party, cause testimony to be taken, or inspection of the premises where the injury occurred to be made, or the timebooks and payroll of the employer to be examined by any member of the board or a workers'

---

[5]Formerly Workmens' Compensation, Insurance and Safety Act of 1917, sections 19(a) and 64(e) (Stats. 1917, ch. 586, §§ 19(a), 64(e) pp. 848, 873).

compensation judge appointed by the appeals board. The appeals board may also from time to time direct any employee claiming compensation to be examined by a regular physician. The testimony so taken and the results of any inspection or examination shall be reported to the appeals board for its consideration."

Section 5906 states: "Upon the filing of a petition for reconsideration, or having granted reconsideration upon its own motion, the appeals board may, with or without further proceedings and with or without notice affirm, rescind, alter, or amend the order, decision, or award made and filed by the appeals board or the workers' compensation judge on the basis of the evidence previously submitted in the case, or may grant reconsideration and direct the taking of additional evidence. Notice of the time and place of any hearing on reconsideration shall be given to the petitioner and adverse parties and to other persons as the appeals board orders."

Based on sections 5701 and 5906, it is well established that the WCJ or the Board may not leave undeveloped matters which its acquired specialized knowledge should identify as requiring further evidence. (*Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 318 [90 Cal.Rptr. 355, 475 P.2d 451] [Board should have obtained medical evidence of causation]; *Lundberg v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300] [Board should have obtained medical evidence of causation]; *W. M. Lyles Co. v. Workmen's Comp. App. Bd.* (1969) 3 Cal.App.3d 132, 138 [82 Cal.Rptr. 891] [Board should have explored employee's willingness to work, opportunities for employment and skill level to determine earnings].) ■ Section 5502, subdivision (d)(3) was enacted to minimize delays and efficiently expedite case resolution by making sure parties are prepared for hearing. "The purpose of the disclosure requirement in section 5502 is obvious: ' "to guarantee a productive dialogue leading, if not to expeditious resolution of the whole dispute, to thorough and accurate framing of the stipulations and issues for hearing." ' (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 685 [43 Cal.Rptr.2d 660], quoting from *Zenith Insurance Co. v. Ramirez* (1992) 57 Cal.Comp.Cases 719.)" (*San Bernardino Community Hospital v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 928, 932 [88 Cal.Rptr.2d 516].)

When enacting section 5502, subdivision (d)(3) as part of the 1989 omnibus reform legislation, the Legislature left sections 5701 and 5906 unchanged. ■ "It is assumed that the Legislature has in mind existing laws when it passes a statute. [Citations.] 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it

and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.'" (*Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874].) Thus the Board has the authority, at any time, to order the taking of additional evidence.

In *Tyler v. Workers' Comp. Appeals Bd.*, *supra*, 56 Cal.App.4th 389, the court held the WCJ should have further developed the record. Changes in the Labor Code abrogated the WCJ's authority to appoint an independent medical examiner. Confronted by two insubstantial medical reports and having lost the authority to appoint an independent medical examiner, the WCJ felt compelled to find no industrial injury. The Board agreed. The *Tyler* court, however, held that the WCJ still had authority to order the parties to obtain supplemental medical reports based on the WCJ's duty to develop the record pursuant to sections 5701 and 5906. (56 Cal.App.4th at p. 394.)

Following *Tyler*, the court in *McClune v. Workers' Comp. Appeals Bd.*, *supra,* 62 Cal.App.4th 1117, remanded for the Board to develop the record further when the WCJ and the Board found no industrial injury because neither party's medical experts addressed whether work aggravated a preexisting hip condition. (*Id.* at p. 1122.)

Most recently, in *M/A Com-Phi v. Workers' Comp. Appeals Bd.*, *supra*, 65 Cal.App.4th 1020, the court remanded for further development of the record because the employee's experts had viewed a surveillance videotape, but the employer's expert had not. The *M/A Com-Phi* court stated that: "In the matter before us, injury is admitted but competent medical evidence as to nature and extent is lacking. The WCJ was free to reject the opinions of [the employee's] doctors, which included consideration of the surveillance films. However, in order to ensure reliance on substantial evidence, and a complete adjudication of the issues consistent with due process, it was necessary for the WCJ or [the] WCAB to have facilitated review of this critical information by Drs. Stalberg and Ruffman, or to employ some other reasonable and fair method considering the circumstances. [¶] . . . [T]he language of Labor Code sections 5701 and 5906 is not specific to employees, and awarding benefits based on medical opinions lacking crucial information violates the employer's due process rights." (*Id.* at pp. 1025-1026.)

Although these decisions did not expressly address the section 5502, subdivision (d)(3) discovery cutoff, they clearly permitted evidence to be admitted after the MSC and even after trial when necessary to accomplish substantial justice.

D. *Kuykendall's Authority Is Distinguishable.* ·

Kuykendall argues that *County of Sacramento v. Workers' Comp. Appeals Bd.* (1999) 68 Cal.App.4th 1429 [81 Cal.Rptr.2d 266]· requires strict application of the section 5502, subdivision (d)(3) discovery cutoff. The *County of Sacramento* court reversed a WCJ's decision (affirmed by the Board) to hold open discovery to permit a supplemental medical report. The court reasoned that because the employee had warning before the MSC that her medical report was insufficient, failed to obtain a supplemental report before filing an application for a hearing, and declared discovery complete, discovery should have closed at the MSC. The court commented that the WCJ's discretion to grant continuances did not override section 5502, subdivision (d)(3) because continuances also required a showing of good cause.

*County of Sacramento* is distinguishable from the instant case because here, SIF had no warning that its evidence was insufficient. The need for the additional evidence was not apparent until Kuykendall's memory failed him at trial. Even though Kuykendall had given SIF a release for the pension records long before trial, the need for further proof that the disability retirement was based on the same injuries did not exist before Kuykendall testified. At that point, it was proper to admit evidence that would clear up the uncertainty in order to accomplish substantial justice, rather than rule based on a deficit of proof, Kuykendall's lack of recollection.

Similarly distinguishable is *San Bernardino Community Hospital v. Workers' Comp. Appeals Bd., supra,* 74 Cal.App.4th 928, which held it was error for the WCJ to hold discovery open to allow an injured worker to submit a medical report and a witness's testimony when neither had been identified at the MSC. The court found the WCJ's duty to develop the record inapplicable on these facts. Here, there is no question that SIF identified prima facie evidence of another source of disability compensation at the MSC. The need for additional evidence became apparent only after Kuykendall testified that he did not remember what body parts he had listed on his application for disability retirement.

E. *Conclusion.*

We hold that in order to rebut unanticipated testimony, due process requires protection of the parties' substantial rights. If an unaddressed and determinative issue arises during trial, it is proper for the WCJ to develop the record.

Kuykendall also contends that admitting the pension application into evidence will deny him due process because he had no chance to offer an

explanation in rebuttal of the evidence. We agree that Kuykendall should have an opportunity to explain. Therefore we will vacate the Board's order and remand the matter to the Board for further proceedings.

## IV. DISPOSITION

The Board's decision is annulled and the matter is remanded for further proceedings consistent with this opinion.

Klein, P. J., and Croskey, J., concurred.