Filed 2/18/15  Radiator USA v. WCAB CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| RADIATOR USA et al.,<br><br>   Petitioners,<br><br>  v.<br><br>WORKERS' COMPENSATION<br>APPEALS BOARD etc., et al.,<br><br>   Respondents. | B255839<br><br>(WCAB No.  ADJ7750590) |

PROCEEDING to review a decision of the Workers' Compensation Appeals Board.  Anne J. Horelly, Workers' Compensation Administrative Law Judge.  Annulled and remanded with directions.

Floyd, Skeren & Kelly, David L. Zimmerman and Phillip Scuderi for Petitioners.

Solov and Teitell, James A. Teitell and John Reff for Respondent Am Kang.

_____

Petitioners seek a writ of review after the Workers' Compensation Appeals Board denied reconsideration of the decision of the workers' compensation judge (WCJ) finding industrial causation of a psychiatric injury and sleep disorder.[1]

The issue presented is whether there is competent medical evidence to support industrial causation of the psychiatric injury and sleep disorder. We hold that the medical evidence on the cause of the psychiatric injury and sleep disorder is not substantial evidence because it is based on an inadequate medical history. We remand the case for further development of the record on the industrial nature of the cause of the psychiatric injury and sleep disorder.

## FACTS

### A.     The Employee's Injury

The employee, Am Kang (Kang), sustained an admitted injury to his back on December 24, 2010 while working as a driver for Radiator USA. Kang additionally claimed to have sustained injury to his psyche in the form of a sleep disorder.

### B.     The Medical Reports

On February 28, 2012, the agreed medical evaluator (AME) in orthopedics, David B. Pechman, M.D., noted compression fractures in Kang's vertebrae that appeared old. Dr. Pechman thought that most of Kang's pain related to the compression fractures. Dr. Pechman opined Kang was permanent and stationary from an orthopedic standpoint on the date of his examination. However, he requested an EMG and nerve conduction study to determine how many of the fractures were radicular and a bone scan to evaluate the cause of Kang's collapsing bones. Dr. Pechman apportioned 50 percent of the orthopedic injury to nonindustrial preexisting metabolic bone disease.

---

[1]     The Petitioners are Radiator USA, the employer; Start Insurance Company, the insurer; and Illinois Midwest Insurance Company, the adjuster. For ease of reference, we will refer to petitioners as Radiator USA.

On July 2, 2012, Rodney Bluestone, MB, FRCP, the qualified medical evaluator of rheumatology, confirmed Kang had metabolic bone disease (osteopenia and osteoporosis) but could not determine a cause. Although Dr. Bluestone requested additional testing to determine the cause of the metabolic bone disease, there was no supplemental report that addressed causation. Dr. Bluestone had a "strong impression that this patient [was] suffering from significant depression, which probably lower[ed] his pain threshold and which [might] impact the quality of his sleep, resulting in greater fatigue and a sleep-and-arousal disorder."

In this report of August 25, 2012, Dr. Pechman acknowledged Dr. Bluestone's report but did not change his opinion on apportionment.

Ana L. Nogales, Ph.D., ABPS, FACFE evaluated Kang as a secondary treating physician in psychology. As reflected in her September 14, 2012 report, Dr. Nogales obtained a history of the injury, history of the treatment, and physical and emotional complaints exclusively from Kang. Dr. Nogales explicitly noted that she did not receive medical or employment records for review.[2]

On the issue of causation, Dr. Nogales found that, as a "consequence of his industrial accident, Mr. Kang developed anxiety that increased with the passage of time and deteriorated at the end of 2011 when he saw that his condition is not improving." Dr. Nogales opined that the "percentage of total causation of Mr. Kang's current mental disorder is estimated at a higher level than the legal threshold of industrial causation of 50 [percent]." She specifically noted a nonindustrial causal factor of a dog bite in 2005 requiring stitches.

Dr. Nogales concluded Kang's condition was not stabilized to the point where residual permanent disability was evident. She found Kang totally and temporarily disabled and unable to return to regular or modified work. Dr. Nogales made no mention of Dr. Pechman's orthopedic diagnosis or his apportionment to the preexisting bone disease.

---

[2]    Kang does not contend otherwise.

Significantly, Dr. Nogales deferred apportionment to the time of the permanent and stationery report "after I have the opportunity to review previous medical, psychiatric and employment records."

*C.     Facts Adduced at the Hearing*

The matter was heard on September 26, 2013. Four of Dr. Pechman's reports were admitted into evidence. Five of Dr. Nogales's progress reports and the September 14, 2012 report were submitted by Kang and admitted with no apparent objection from Radiator USA. Radiator USA submitted Dr. Bluestone's July 2, 2012 report.

Kang was the only witness who testified at the hearing. Kang stated he saw Dr. Nogales because he was nervous, had feelings of dread, and could not sleep. He told Dr. Nogales he could not sleep, he was nervous, and sometimes he wanted to die. Dr. Nogales told him her diagnosis was "deep depression."

Kang told Dr. Nogales about a dog bite requiring stitches in 2005 but he did not recall telling Dr. Nogales that he was bothered by images of his accident or that he was reliving the traffic accident. Kang divorced in 1996, which had an emotional impact. Kang felt it would be harder to raise his children as he was the one taking care of them.[3] He was unable to see two of his grandchildren because of his finances but continued to hope that he would. Kang did not recall if he discussed grandchildren with Dr. Nogales.

At the time of the hearing, Kang continued to have trouble sleeping. His difficulty sleeping began after his injury because he claimed to have received no treatment for four months after the accident.

---

[3]     At the time of his deposition on July 25, 2011, his children were aged 45, 40 and 38. Accordingly, in 1996, his children were approximately 30, 25 and 23, all adults.

*D.      The Rulings of the WCJ and the Appeals Board*

On December 26, 2013, the WCJ issued findings of fact concluding Kang sustained industrial injury to his back, to his psyche, and in the form of a sleep disorder. The WCJ found Kang reached maximum medical improvement for his physical injury on February 28, 2012, but was still temporarily disabled from the psychiatric injury. The WCJ relied on the doctors' reports as well as the "credible testimony" of Kang.

Radiator USA petitioned for reconsideration. Reconsideration was sought based "upon a lack of medical evidence to support this finding." Radiator USA claimed Dr. Bluestone was a rheumatologist, not a psychologist/psychiatrist or sleep specialist, and his impression of Kang's depression and sleep problems was not substantial evidence. Similarly, Dr. Pechman was an AME in orthopedics, not a psychologist/psychiatrist or sleep specialist.

As to the psychologist's opinions, Radiator USA criticized Dr. Nogales's failure to acknowledge Kang's nonindustrial metabolic bone disease as a cause of the pain and sleep disorder, the inconsistency between Dr. Nogales's report and Kang's testimony at trial regarding reliving the accident, and the omission of other causal factors including the divorce and separation from grandchildren. Radiator USA argued that without a review of past and present medical records and a true history of applicant's past emotional events, there was no support for a finding of industrial psychiatric injury.

On March 17, 2014, the appeals board issued an opinion and order denying reconsideration. The appeals board found the doctors "based their opinions on extensive discussions with [Kang] regarding how he sustained his injury and his condition thereafter." The appeals board found that, based on these discussions, Dr. Nogales concluded the industrial cause of Kang's psychiatric injury was higher than the legal threshold. The appeals board found the doctors explained the reasoning behind their conclusions. On the other hand, Radiator USA offered no evidence, documentary or testimonial, rebutting or impeaching the medical reports. The appeals board specifically determined that the medical reports constituted substantial evidence. In addition, the

appeals board gave great weight to the WCJ's determination that Kang was credible, especially in light of the lack of contradictory witness or medical evidence.

We granted Radiator USA's petition for writ of review.

## DISCUSSION

*A.    There is a Reviewable Threshold Issue*

As a preliminary matter, a petition for writ of review may be sought only from a final order, decision, or award of the appeals board. (Lab. Code, §§ 5900, 5901;[4] *Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1074; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed.) § 34.10[2], p. 34-9.) However, certain threshold issues that are dispositive of the case are reviewable before there is a final decision in the case. Whether the injury arose out of and in the course of employment, as is the issue in this case, is a recognized threshold issue. (*Safeway Stores, Inc. v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 533-534, fn. 2 and accompanying text.) Thus, the decision in this case is reviewable under the aegis of a writ of review.

*B.    General Principles*

A psychiatric injury is compensable if actual events of employment were predominant as to all causes combined of the psychiatric injury. (§ 3208.3, subd. (b)(1).) The phrase " 'predominant as to all causes' " has been found to be "greater than a 50 percent share of the entire set of causal factors." (*Department of Corrections v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 810, 816.) Causation of a psychiatric injury requires competent medical evidence. (*San Francisco Unified School Dist. v. Workers' Comp. Appeals Bd.* (2010) 190 Cal.App.4th 1, 9 citing to *Rolda v. Pitney Bowes Inc.* (2001) 66 Cal.Comp.Cases 241, 245.)

---

**4**    Further statutory references are to the Labor Code.

When determining whether the appeals board's conclusion was supported by substantial evidence, the evidence should be considered in light of the entire record. (§ 5952, subd. (d); *Le Vesque v. Workers' Comp. Appeals Bd.* (1970) 1 Cal.3d 627, 637.) "Medical reports and opinions are not substantial evidence if they are known to be erroneous, or if they are based on facts no longer germane, on *inadequate medical histories* and examinations, or on incorrect legal theories." (*Hegglin v. Workers' Comp. Appeals Bd.* (1971) 4 Cal.3d 162, 169, italics added.)

## C.     *The Flaw in Dr. Nogales' Conclusion*

The sole medical evidence of industrial causation came from psychologist Dr. Nogales. It is true that the appeals board addressed the examination conducted by Dr. Bluestone, the rheumatologist, noting Kang to be severely fatigued and suffering from a significant depression. However, apart from the fact that Dr. Bluestone is not qualified to render a psychiatric evaluation as to depression, there is nothing in Dr. Bluestone's reporting that speaks to the cause of Kang's condition.

Dr. Nogales found that Kang's psychiatric condition was the result of his orthopedic injuries. Dr. Nogales, however, was completely unaware of the fact that Dr. Pechman had apportioned 50 percent of the orthopedic injury to nonindustrial preexisting metabolic bone disease. Does this mean that 50 percent of the psychiatric injury is attributable to nonindustrial causes? While we acknowledge that these determinations cannot be made with mathematical precision, it is at least a major issue what portion of the psychiatric injury is attributable to nonindustrial causes. Although 50 percent is a reasonable surmise, on this silent record it is equally plausible to suppose that, given that psychiatric evaluations are unavoidably case-specific, 60 percent of the psychiatric injury - or 40 percent thereof - is attributable to nonindustrial causes. In short, what is needed here is an expert opinion that is based on a complete medical history, which necessarily includes Dr. Pechman's finding that 50 percent of the orthopedic injury is attributable to nonindustrial causes.

As far as the firmness of Dr. Pechman's 50 percent apportionment to nonindustrial causes is concerned, Dr. Pechman maintained this opinion after he reviewed Dr. Bluestone's report.

It does Dr. Nogales credit that she expressly deferred the issue of apportionment to a time when she would have seen the medical and employment records. Notwithstanding her refusal to comment on apportionment, and irrespective of Dr. Pechman's allocating 50 percent of the orthopedic injury to nonindustrial causes, the appeals board accepted Dr. Nogales's conclusion that the "percentage of total causation of Mr. Kang's current mental disorder is estimated at a higher level than the legal threshold of industrial causation of 50 [percent]." This opinion, however, could hardly have been anything more than tentative and entirely conditional on the review of records that Dr. Nogales very candidly acknowledged she had not seen. Given its admitted limitations, Dr. Nogales's report is not competent medical evidence on the cause of Kang's psychiatric injury and sleep disorder.

### D.     *The Appeals Board's Duty to Develop the Record*

Given the lack of competent medical evidence on causation, the decision of the appeals board cannot stand. The question now becomes whether it is appropriate to return the case for further development of the record on the issue of the cause of the psychiatric injury and sleep disorder.

Section 5906 specifically empowers the appeals board to take additional evidence upon the filing or granting of a petition for reconsideration.[5] Independently of a petition

---

[5]     "Upon the filing of a petition for reconsideration, or having granted reconsideration upon its own motion, the appeals board may, with or without further proceedings and with or without notice affirm, rescind, alter, or amend the order, decision, or award made and filed by the appeals board or the workers' compensation judge on the basis of the evidence previously submitted in the case, or may grant reconsideration and direct the taking of additional evidence." (§ 5906.)

8

for reconsideration, section 5701 empowers the appeals board to cause testimony to be taken and, among other things, to direct the performance of medical examinations.**6**

This power to take additional evidence has long been recognized:

> "The [appeals board] is a court [citation] deliberately clothed by the Legislature with administrative facilities to permit it to develop the facts in reference to matters not generally known to laymen. It was not intended that the litigants before it be impaled upon the results of their lack of familiarity with the often occult problems of medical science frequently arising in compensation cases. As a consequence the [appeals board] may not leave undeveloped matters which it acquired, specialized knowledge should identify as requiring further evidence. In this case the resolution of the issues of injury and disability was not patent. Medical evidence thereon was therefore required. Under these circumstances the [appeals board] had the responsibility of seeing to it that such evidence was reasonably complete, whether by use of its own medical experts or otherwise." (*West v. Industrial Acci. Com.* (1947) 79 Cal.App.2d 711, 719.)

It is not too much to say that the appeals board is more than simply empowered to take additional evidence. It is now well established that the appeals board has an affirmative duty to develop an adequate record. As an example, where the medical evidence was evenly balanced on the issue of industrial causation, our Supreme Court held that the appeals board was not free to simply rule that the employee had failed to sustain his burden of proof but was required to take additional evidence in order to resolve the doubts raised by the existing medical reports. (*Lundberg v. Workers' Comp. Appeals Bd.* (1968) 69 Cal.2d 436, 440.)

---

**6** "The appeals board may, with or without notice to either party, cause testimony to be taken, or inspection of the premises where the injury occurred to be made, or the timebooks and payroll of the employer to be examined by any member of the board or a workers' compensation judge appointed by the appeals board. The appeals board may also from time to time direct any employee claiming compensation to be examined by a regular physician. The testimony so taken and the results of any inspection or examination shall be reported to the appeals board for its consideration." (§ 5701.)

9

This principle has enjoyed continuing support.  (*Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 404 ["it is well established that the WCJ or the Board may not leave undeveloped matters which it acquired specialized knowledge should identify as requiring further evidence"]; *M/A Com-Phi v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1020, 1025; *McClune v. Workers' Comp. Appeals Bd.* (1998) 62 Cal.App.4th 1117, 1120.)  In fact, it has been held that a full development of the record to enable a "complete adjudication [on the merits]" is an employee's due process right.  (*Tyler v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 389, 394.)

The medical reporting in this case had a serious flaw which the appeals board should have recognized and, had *the responsibility*, to cure.  Dr. Nogales's report could not sustain a finding of industrial causation because her evaluation, as acknowledged in her report, was not yet complete.  Instead of focusing on the lack of medical evidence on the issue of causation, the appeals board noted that the defendant had not offered any evidence rebutting or impeaching the medical reporting, i.e., Dr. Nogales's report. ~(RP 403.)~ While the defendant could have acted more vigorously, it is also true that the appeals board "may not leave undeveloped matters which it acquired, specialized knowledge should identify as requiring further evidence."  (*West v. Industrial Acci. Com. supra*, 79 Cal.App.2d at p. 719.)

## DISPOSITION

The decision of the appeals board is annulled and the matter is remanded for further proceedings consistent with this opinion.  Petitioners to recover their costs.


                                              RUBIN, J.

WE CONCUR:



BIGELOW, P. J.                                              GRIMES, J.


10