Filed 11/3/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>

THE PEOPLE,

      Plaintiff and Respondent,

v.

EUGENE MARTIN HANNON,

      Defendant and Appellant.

</td><td>

A145945

(Contra Costa County
Super. Ct. No. 05-130435-1)

</td></tr>
</table>

Defendant Eugene Martin Hannon (appellant) appeals from the trial court's restitution award. He contends the court abused its discretion in awarding restitution for attorney's fees, lost wages, and travel expenses incurred by the victim, and claims trial counsel was ineffective during the restitution hearing. This court granted the victim's request to file an impact statement on appeal. In the unpublished portion of this opinion, we reject appellant's challenges to the trial court's restitution award. In the published portion, we conclude the victim is entitled to file a victim impact statement on appeal, pursuant to article I, section 28 of the California Constitution, as amended by The Victims' Bill of Rights Act of 2008, also known as Marsy's Law, adopted by voter initiative Proposition 9 in 2008. We also decide the victim's right to file this impact statement does not permit her to present legal issues not raised by appellant or facts not in the record below.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

1

BACKGROUND[1]

On August 27, 2012 a felony complaint charged appellant with grand theft by embezzlement by a fiduciary (Pen. Code, §§ 487, subd. (a), 506). Appellant, an attorney, represented Tyrone Barber in family court and civil court matters against the victim, Barber's former domestic partner, Dr. Rose Magno. On December 13, 2006, the parties settled some of their outstanding disputes, and agreed that Barber would fund a college trust for their three children. Barber paid a total of $27,500.32 to appellant as the trustee of the children's funds and authorized appellant to open a trust account with Union Bank of California for the children.

In February 2011, the victim became aware that the funds for her children had been misappropriated and appellant may have used the money to reimburse himself to cover legal fees owed by Barber. In August 2012, the criminal complaint was filed, and, in September 2013, appellant pled no contest to misdemeanor theft by embezzlement. The trial court placed appellant on probation for two years, ordered him to perform 240 hours of community service, and ordered him to pay restitution in an amount to be determined.[2]

On July 10, 2015, the trial court ordered appellant to pay $40,800 in restitution to the victim, consisting of $25,000 in attorney's fees, $15,000 in lost wages, and $800 in mileage resulting from the embezzlement.[3] This appeal followed.

DISCUSSION

I.    *Appellant's Challenges to the Restitution Award*

Under Penal Code section 1202.4, subdivision (f), a trial court must order victim restitution "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." The court "shall require" the defendant to make restitution "based on the amount of loss claimed by the victim . . . or any other showing to the court." (Pen.

---

[1] As there was no preliminary hearing or trial, the background facts herein have been drawn from the Probation Report.
[2] Previously, appellant was disbarred.
[3] The funds appellant misappropriated had previously been recovered in a settlement with appellant's insurer.

2

Code, § 1202.4, subd. (f); see also Pen. Code, § 1202.4, subd. (f)(3).) Appellant contends the trial court abused its discretion in awarding restitution in the amount of $25,000 for attorney fees, $15,000 for lost wages, and $800 for mileage. We reject the claim.

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*); accord *People v. Santori* (2015) 243 Cal.App.4th 122, 126.) The preponderance of the evidence standard of proof applies. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) This court reviews the trial court's restitution award for an abuse of discretion. (*Ibid.*) "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562 (*Dalvito*).)

A.      *The $25,000 Attorney's Fee Award*

Appellant contends the $25,000 restitution award for attorney's fees is unsupported by the evidence. He also argues that, pursuant to *Millard, supra,* 175 Cal.App.4th at p. 33, the lodestar method is the proper method for calculating the fees, and there is nothing in the record indicating the court relied on the lodestar factors.

The Attorney General contends appellant never argued in the trial court that the lodestar method calculation was required and, therefore, has forfeited this issue. No forfeiture has occurred. Generally, if a defendant does not raise an objection in the trial court he has waived the objection and may not appeal on that ground. (*People v. Partida* (2005) 37 Cal.4th 428, 434.) This rule is designed to ensure the lower court and the opposing party know the specific reasons for the objection so the court may make a fully informed ruling. (*Id.* at p. 435.) "A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*Ibid.*)

3

Appellant personally presented his arguments about restitution at the hearing. Although he never used the term "lodestar" or referenced *Millard* when he addressed the trial court, he clearly argued that the information in the record lacked specificity regarding the number of hours devoted to the trust account issue by the victim and her attorneys. He argued the record was deficient because it did not separate the billings from more than nine years of litigation in a separate family law matter from the billings related to the trust account issue. Further, appellant pointed out the victim had failed to provide itemized, unredacted dates, times, and amounts for attorney's fees, as the trial court had ordered her to do. He argued her failure to do so made it impossible to determine which attorney hours were related to the trust account issue, particularly because the victim had multiple attorneys working on different legal matters simultaneously. Thus, appellant has not forfeited his claim that an award of attorney's fees as restitution must be based on the lodestar method calculation.

Nevertheless, we reject appellant's claim of error. He relies on *Millard*, *supra*, 175 Cal.App.4th 7, in which the defendant drove under the influence of alcohol and killed another driver. In calculating restitution for attorney's fees incurred by the decedent's wife, *Millard* held the trial court could not calculate the fees based solely on a contingency agreement. (*Millard*, at p. 33.) Instead, the "court must begin with the lodestar calculation and then make adjustment upward or downward." (*Ibid.*) However, in *Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1136, the California Supreme Court indicated there is no established preference for the lodestar method. There, the Court concluded the lodestar method was appropriate for calculating an award of attorney's fees following a defendant's successful anti-SLAPP motion, but the Court also emphasized, "we are not mandating a blanket 'lodestar only' approach; every fee shifting statute must be construed on its own merits." (*Ibid.*)

In *People v. Taylor* (2011) 197 Cal.App.4th 757, 762–763, another case involving a restitution award for attorney's fees resulting from an automobile injury, the court criticized *Millard*. *Taylor* concluded that *Millard* ignored the "essential point" of *Ketchum's* qualified support for the lodestar method, and improperly imposed a "lodestar

4

only" approach. (*Taylor*, at pp. 762–763.) *Taylor* explained, "the lodestar method is a fee shifting mechanism applied in contexts such as civil litigation which confers a ' "significant benefit" ' to the public [citation], or to bring about attorney fee shifting to discourage SLAPP suits." (*Id.* at p. 763.) However, the primary purpose for awarding attorney's fees as victim restitution in a criminal case is to make the victim whole. (*Ibid.*) Thus, although the lodestar method is certainly one appropriate method that the trial court could have adopted to calculate compensable attorney's fees in this case, it was not required to do so.

Neither did the court abuse its discretion when it awarded $25,000 in attorney's fees. A victim is entitled to receive "actual and reasonable attorney's fees and other costs of collection accrued by a private entity on [her] behalf. . . ." (Pen. Code § 1202.4, subd. (f)(3)(H).) The trial court has broad discretion to choose a method for calculating the amount of restitution, but it must employ a method that is rationally designed to determine the … victim's economic loss. (*People v. Giordano* (2007) 42 Cal.4th 644, 663-664 (*Giordano*).) "[T]he trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*Id.* at p. 664.) In *Giordano*, the defendant appealed an order to pay restitution to the victim's wife, claiming the court abused its discretion in calculating her loss of economic support by awarding her the decedent's full annual salary for five years. (*Id.* at p. 650.) Although the Supreme Court acknowledged "the trial court's method of calculation was not carefully designed to establish [the victim's] loss of support," it held there was no abuse of discretion because the defendant had failed to prove the amount awarded exceeded what the victim was eligible to receive. (*Id.* at p. 666.)

In the present case, the parties submitted hundreds of pages of documents that they argued related to appellant's restitution. The trial court reviewed the documents. At the outset of the restitution hearing, the court stated, "[c]ounsel and I have spent a substantial amount of time in chambers trying to narrow the issues . . . for this restitution hearing." In announcing its ruling, the court explained, "[i]n discussing this with [c]ounsel, who are

5

much more familiar with these proceedings than I am, we came out with" 19 different court appearances and three days of State Bar hearings "all attributable to just this conduct having to do with that initial trust account that was set up for the benefit of [the victim's] children." Based on the in-chambers discussion with counsel, the court awarded the victim $25,000 in attorney's fees, in addition to the $15,000 for attorney's fees the victim had already received in a civil settlement from appellant and his insurance company.

Appellant has not shown the amount of restitution awarded for attorney's fees was an abuse of discretion. "On appeal, we presume that a judgment or order of the trial court is correct, ' " [a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Giordano*, *supra*, 42 Cal.4th at p. 666.) The in-chambers discussion, which was crucial to the trial court's ruling, was unreported. Appellant has not demonstrated the trial court erred in relying upon its consultation with counsel in determining which proceedings related to the trust account issue. And, although the trial court did not specify the number of hours and hourly rate as would be typical in a lodestar method calculation, appellant has not demonstrated the court erred in finding that $40,000 in fees were attributable to preparing for and appearing at 19 court dates and 3 days of State Bar hearings. (See *ibid.* [affirming restitution award because, "[d]espite the trial court's methodological imprecision," the defendant had failed to show the victim's loss was "less than the amount of restitution ordered"].)

B.      *The $15,000 Award for Lost Wages*

Appellant argues the $15,000 restitution award for lost wages is unsupported by the record. We reject the claim. A victim must be compensated for wages or profits lost due to injury resulting from a defendant's criminal conduct. (Pen. Code § 1202.4, subd. (f)(3)(D).) The trial court "is not required to make an order in keeping with the exact amount of loss," but it "must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious." (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 992.)

6

In fashioning a restitution award for the victim's lost wages, the trial court considered the evidence submitted by the parties, and relied upon the in-chambers discussion with counsel. The court rejected as excessive the victim's request for $162,867 in lost wages. Instead, the court calculated an hourly work rate of $150 based on the victim's 2012 tax return and testimony regarding the victim's work schedule. In order to calculate the total number of work hours lost by the victim as a result of her attendance at court proceedings and State Bar hearings, the trial court once again relied on the number of proceedings that counsel had agreed related to the trust account issue. The court determined the victim lost a total of 74 hours of work.

The amount awarded, $15,000, exceeds the amount produced by multiplying the hourly rate by the number of hours of lost work.[4] But this does not establish an abuse of discretion. The $150 hourly rate was a reasonable *approximation* based on the victim's tax return. The 74 hours of lost work was also an approximate number of hours. Simply multiplying those two numbers failed to take into account other considerations in calculating lost wages—for example, additional hours the victim spent preparing for the hearings she attended and the reasonable possibility she blocked off more time in her schedule than necessary, given that she could not predict how long the court proceedings would take. Thus, it was neither arbitrary nor capricious for the trial court to increase the award from $11,100 to $15,000.

Appellant argues the trial court erred in calculating the hourly rate based on the gross revenues of the victim's dental business, rather than based on her actual income (profit remaining after expenses). However, the victim's gross business revenues reflected what she was able to produce by her labor over the course of the year. The trial court could have reasoned that the victim's annual expenses were largely fixed and each additional work hour lost therefore approximately translated into corresponding lost profits. Thus, the hourly rate used by the court in its calculation was not arbitrary. Appellant also challenges the basis for the trial court's determination of which hearings

---

[4] 74 hours x $150 = $11,100.

were relevant to the trust account issue.  However, as discussed above, the court's finding was based on an in-chambers consultation with counsel.  Appellant has not shown the trial court erred in relying on that discussion with counsel.  We reject appellant's challenge to the amount awarded for lost wages.

C.    *The $800 Award for Travel Expenses*

Appellant contends the trial court erred when it awarded $800 in restitution for mileage to attend court proceedings.  We disagree.  Penal Code section 1202.4, subdivision (f)(3)(D), allows for recovery of a broad variety of economic losses that are incurred as a result of the defendant's criminal conduct.  The legislature intended for a "loss" under Penal Code section 1202.4 to be construed broadly, and " [b]ecause the statute uses the language 'including but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." (*People v. Keichler, supra,* 129 Cal.App.4th at p. 1046.)

In awarding $800 for mileage, the trial court stated it relied on its finding, made in consultation with counsel in chambers, as to the number of hearings the victim attended "related solely" to the trust account issue.  Appellant faults the court for not specifically identifying those hearings, but appellant was presumably aware which hearings the court had in mind, given that the court arrived at the list through a discussion with counsel. Appellant has not demonstrated error.  (See *Giordano*, *supra*, 42 Cal.4th at p. 666.)

D.    *Appellant Has Not Demonstrated Ineffective Assistance of Counsel*

Appellant argues his trial counsel provided ineffective assistance by failing to argue against the trial court's restitution award. We reject the claim.

In order to establish ineffective assistance of counsel, appellant must show counsel's performance was deficient and the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 688.)  To demonstrate deficient performance, appellant must show counsel's "representation fell below an objective standard of reasonableness." (*Ibid.*)  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

8

the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Id.* at p. 689.) The test for prejudice requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 695.)

Appellant argues, "trial counsel was deficient [for failing] to argue that the court should make a finding as to the specific [court and state bar hearings related] to the misappropriated funds, when they occurred, how long they lasted, and how much preparation time was involved." However, appellant acknowledges that counsel "met with the court in chambers and discussed the hearings which the court should use in calculating attorney's fees, lost wages and transportation restitution." As previously noted, the in-chambers discussion was unreported. On a silent record we presume trial counsel had a rational tactical ground for not objecting to the trial court's findings or requesting more specificity: that the number of hearings identified by the trial court as relating to the trust account issue, and the court's estimate of the time spent by counsel and the parties in connection with those hearings, were consistent with the consensus reached in the unreported in-chambers conference. Similarly, counsel may have declined to object to the trial court's hourly wage rate calculation because the court's estimate was reasonable. (See *People v. Wilson* (1992) 3 Cal.4th 926, 936 [" 'unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected"].)

II.     *Dr. Magno's Victim Impact Statement*

During the pendency of the present appeal, this court was informed by the Attorney General's Victims' Services Unit that the victim, Dr. Rose Magno, desired to submit a victim impact statement to this court on the restitution issue. This court granted the request and the victim subsequently submitted a statement with attachments (the Statement). As explained below, the victim had the right to submit the Statement for our

9

consideration, but it was not proper for the victim to raise new legal issues or rely on facts not in the record below.[5]

A.      *Summary of the Victim's Statement*

In the Statement submitted to this court, the victim begins by summarizing the factual and procedural background, explaining how appellant misappropriated funds given to him by her former domestic partner for the benefit of her children, and how she aided in efforts to disbar appellant. On the issue of restitution, the victim argues appellant was not ordered to pay enough. Most prominently, she argues the trial court failed to order appellant to pay the full amount of interest due from the date of loss in 2007. (See Pen. Code § 1202.4, subd. (f)(3)(g) [restitution order shall include "[i]nterest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court."].) She asserts she was paid $10,000 in interest in a settlement with appellant's insurer, but claims appellant still owes over $11,000 more in interest. An attachment to the Statement lays out her calculations.

The victim also suggests the restitution award did not sufficiently compensate her for the amount she spent in attorney's fees and for lost work time as a dentist. An attachment to the Statement asserts she incurred approximately $80,000 in attorney's fees, approximately $5,500 in court costs, and $162,867 in "loss of production." She also asserts her mileage costs were $1381.39, rather than the $800 awarded by the court.

The victim urges that appellant be ordered to produce a lien signed by her former domestic partner at appellant's direction "because it may show that he stole more than $27,500."

---

[5] We requested supplemental letter briefs from the parties regarding the victim's request to file an impact statement on appeal. Appellant argued the victim did not have the right to file such a statement. Respondent took the position the victim had "limited standing" to present a statement, but the statement could "not raise matters that were not presented in the trial court." We also provided the victim an opportunity to address the proper scope of a victim impact statement on appeal and respond to the parties' submissions on that issue. The victim did not file a supplemental letter brief.

Finally, the Statement contains, among other things, factual assertions about how the victim was treated by appellant during the various proceedings, descriptions of the emotional toll caused by appellant's actions, and unfavorable characterizations of appellant.

B. *Overview of Marsy's Law*

The Victims' Bill of Rights Act of 2008, also known as Marsy's Law, was adopted by a voter initiative, Proposition 9 in 2008. The measure was named after a young woman who was murdered in 1983; it sought to address a number of ways in which the criminal justice system inadequately protected the victims of crime. (*In re Vicks* (2013) 56 Cal.4th 274, 281–282 (*Vicks*).) Marsy's Law "find[s] and declare[s]" that "[v]ictims of crime are entitled to have the criminal justice system view criminal acts as serious threats to the safety and welfare of the people of California. The enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system fully protecting those rights and ensuring that crime victims are treated with respect and dignity, is a matter of high public importance. California's victims of crime are largely dependent upon the proper functioning of government, upon the criminal justice system and upon the expeditious enforcement of the rights of victims of crime described herein, in order to protect the public safety and to secure justice. . . ." (Cal. Const., art. I, § 28, subd. (a)(2)–(3); see also *Vicks*, at p. 282.)

Among other amendments, Marsy's Law amended article I, section 28 of the California Constitution (hereafter "Section 28"). Section 28, known as "The Victims' Bill of Rights," was originally added to the California Constitution by a 1982 initiative, Proposition 8. (*People v. Birkett* (1999) 21 Cal.4th 226, 230; *In re David* (2012) 202 Cal.App.4th 675, 682, fn. 5.) As originally enacted, Section 28 articulated a number of rights, including the right to restitution. As amended by Marsy's Law, Section 28, subdivision (b) lists 17 specific and expansive rights to which a victim is entitled "[i]n order to preserve and protect [the] victim's rights to justice and due process." (§ 28, subd. (b).) Section 28, subdivision (b)(13)(A), describes the right to restitution in

language similar to the 1982 enactment, stating "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer."  Most significantly, the original enactment referred to a victim's "right to restitution," rather than the "right to seek and secure restitution."  (See former § 28, subd. (b).)

Also, and specifically at issue in the present case, the expanded list of rights added by Marsy's Law includes a victim's right "[t]o be heard, upon request, at any proceeding, including any delinquency proceeding, involving a post-arrest release decision, plea, sentencing, post-conviction release decision, or any proceeding in which a right of the victim is at issue."  (§ 28, subd. (b)(8).)

Marsy's Law also amended Section 28 to provide that a victim may independently seek to enforce his or her rights.  Thus, Section 28, subdivision (c)(1) provides, "A victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim, may enforce the rights enumerated in subdivision (b) in any trial or appellate court with jurisdiction over the case as a matter of right.  The court shall act promptly on such a request."  (See also § 28, subd. (f) [referring to the "enumerated rights provided in subdivision (b) that are personally enforceable by victims as provided in subdivision (c)"].)

C.    *Guidelines for Interpreting Voter Initiatives*

"Under our constitutional system the Legislature is not the exclusive source of legislative power."  (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1042 (*Professional Engineers*).)  "The legislative power of this State is vested in the California Legislature which consists of the Senate and the Assembly, but the people reserve to themselves the powers of initiative and referendum."  (Cal. Const., art. IV, § 1.)  "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them."  (Cal. Const., art. II, § 8, subd. (a).)

" 'The principles of constitutional interpretation are similar to those governing statutory construction.  In interpreting a constitution's provisions, our paramount task is to ascertain the intent of those who enacted it.  [Citation.]  To determine that intent, we "look first to the language of the constitutional text, giving the words their ordinary meaning."  [Citation.]  If the language is clear, there is no need for construction. [Citation.]  If the language is ambiguous, however, we consider extrinsic evidence of the enacting body's intent.' " (*Professional Engineers*, *supra*, 40 Cal.4th at p. 1037.) "Similarly, '[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction.  [Citation.]  Thus, "we turn first to the language of the [initiative], giving the words their ordinary meaning."  [Citation.]  The [initiative's] language must also be construed in the context of the statute as a whole and the [initiative's] overall . . . scheme.'  [Citation.]  'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.'  [Citation.]  Where there is ambiguity in the language of the measure, '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' " (*Ibid.*)

Finally, "[t]here is a presumption, though not conclusive, that voters are aware of existing laws at the time a voter initiative is adopted." (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 410 (*Santos*).)

> D.     *Marsy's Law Entitles a Victim to File an Impact Statement on Appeal But Does Not Obligate This Court to Consider New Issues and Facts in Such a Statement*

At the outset, we can easily resolve the question of whether the victim had the right to file a victim impact statement in the present appeal.  Section 28, subdivision (b)(13)(A), provides the victim "the right to seek and secure restitution" from appellant. Section 28, subdivision (b)(8) provides the victim the right "[t]o be heard, upon request, at . . . any proceeding in which a right of the victim is at issue." (§ 28, subd. (b)(8).) This is plainly a "proceeding" in which the victim's right to restitution is "at issue."  (See

13

*Santos*, *supra*, 238 Cal.App.4th at p. 416 [listing definitions of the term "proceeding"].) The only reasonable interpretation of Section 28, subdivision (b)(8) is that it obligated this court to grant the victim's request to file a victim impact statement, such a written submission being an appropriate way for the victim to be heard on appeal.

In arguing the victim did not have the right to file an impact statement, appellant focuses on Section 28, subdivision (c)(1), which states, "A victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim, may enforce the rights enumerated in subdivision (b) in any trial or appellate court. . . ." Appellant argues, "The use of the disjunctive 'or' clearly communicates that one person or entity will undertake enforcement of the victim's enumerated rights." We reject that interpretation, which conflicts with the plain language of Section 28, subdivision (b)(8) permitting a victim the right to be heard upon request. (*Shaw v. People ex rel. Chiang* (2009) 175 Cal.App.4th 577, 598 [in construing an initiative, courts seek to " 'harmonize the various parts of the enactment' "].) Moreover, appellant points to nothing indicating the victim *requested* respondent to enforce her rights on appeal. To the contrary, the victim's request to file an impact statement indicates her desire to speak on her own behalf.

However, it remains unclear what it means for a victim to have the right to be "heard" on appeal. Appellant takes the position that, if the victim has the right to submit a victim impact statement, this court "may give no consideration to any new information or claims" therein. Respondent takes the position that the victim may not present facts outside the record below and may only raise matters presented to the trial court. As explained below, we hold a victim may neither raise new issues nor rely on new facts in a victim impact statement submitted on appeal.

1. *Prior Legal Interpretation of a Right to be "Heard"*

An analysis of what it means to provide an opportunity to be "heard" appears in *Lewis v. Superior Court* (1999) 19 Cal.4th 1232 (*Lewis*). That case arose in the context of petitions for writ of mandate or prohibition, where in certain circumstances an appellate court may issue a peremptory writ without having issued an alternative writ or

14

order to show cause. (*Id.* at p. 1236.) In a prior case, *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, the Court had held that, prior to issuance of such a peremptory writ, the adverse parties must receive notice and an opportunity to present opposition. (*Lewis*, at p. 1236.) In *Lewis,* the court was confronted with the question of "whether, in those limited situations where the accelerated *Palma* procedure is appropriate, a court must provide an opportunity for oral argument before issuing a peremptory writ in the first instance." (*Lewis*, at p. 1236.)

As relevant in the present case, *Lewis* analyzed section 1088 of the Code of Civil Procedure, which authorizes a court to issue a peremptory writ without prior issuance of an alternative writ or order to show cause. (*Lewis*, *supra*, 19 Cal.4th at pp. 1240, 1245.) The statute states, "The writ cannot be granted by default. *The case must be heard by the court*, whether the adverse party appears or not." (Code Civ. Proc., § 1088 [italics added].) *Lewis* stated that language "may be interpreted to require a 'hearing' before the issuance of a peremptory writ of mandate or prohibition," but the language left unclear whether such a hearing must include an opportunity for oral argument. (*Lewis*, at pp. 1246–1247.) The court considered dictionary definitions of the terms "hear" and "hearing," but the definitions were inconclusive on the question before the court. (*Id.* at p. 1247 & fn. 9.) *Lewis* noted "[t]he word 'hear' is defined as follows: 'to be made aware of by the ear [or] apprehend by the ear,' 'to be informed or gain knowledge of by hearing,' 'to listen to with favor or compliance,' 'to listen to with care or attention,' 'to attend and listen to,' 'to listen to the recitation of,' 'to give a legal hearing to,' or 'to take testimony from.' " (*Id.* at p. 1247, fn. 9.) *Lewis* also surveyed prior case law, observing "California courts have concluded that use of the terms 'heard' or 'hearing' does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent." (*Id.* at p. 1247.) The court ultimately concluded that "the statutes and rules governing peremptory writs of mandate and prohibition" did not require an opportunity for oral argument before issuance of a peremptory writ in the first instance. (*Id.* at p. 1236.) "In context, the requirement that the case 'must be heard' means that the court cannot issue the writ by default, but rather must consider and

evaluate the petition before granting the relief requested, even if the adverse party does not respond to the petition." (*Id.* at p. 1250.)

*Lewis* is of only limited assistance in the present case. Section 28 uses the term "heard" in the sense of an opportunity to make a presentation to a court, while the provision in *Lewis* used the term in the sense of a court's determination of an issue (i.e., a person's right to be "heard" vs. a court's "hearing" of a matter). (See *Niles v. Edwards* (1892) 95 Cal. 41, 43 ["The term 'heard,' as here used, . . . .signifies the consideration and determination of a cause by the court or by a judge, as distinguished from a trial of a cause."]; see also *Lewis*, *supra*, 19 Cal.4th at p. 1248 [discussing *Niles*].) And, of course, the issue in the present case is not whether a victim has the right to make an oral presentation,[6] but whether, in presenting a victim impact statement to a court of appeal, a victim may introduce new issues or facts. Nevertheless, *Lewis* does support the proposition that the term "heard" does not have a set meaning and the meaning instead depends on context.

        2.      *Appellate Rules Regarding the Presentation of New Issues and Facts*

The context in the present case is a victim's right "to be heard" in this appellate proceeding in which the victim's right to restitution is "at issue." (§ 28, subd. (b)(8).) The victim's right is at issue because the appellant has filed an appeal in which he argues the trial court's restitution award lacks support in the record. In order for the victim to be heard on that issue, a victim must, on request, be permitted to make a presentation for this court to "consider and evaluate" in deciding the appeal. (*Lewis*, *supra*, 19 Cal.4th at p. 1250.) It is clear such a statement may properly seek to persuade the court by providing a victim's perspective on the issues on appeal in light of the facts in the record.

The question whether a victim may rely on facts *not* in the record on appeal is also straightforward. In order to effectuate the trial court's principal responsibility over questions of fact, it is well-established that on appeal we generally consider only evidence presented to the court below. As explained by the California Supreme Court,

---

[6] The victim did not request an opportunity to make an oral presentation to this court.

16

"[i]t has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law. . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. 'Although appellate courts are authorized to make findings of fact on appeal . . . , the authority should be exercised sparingly. [Citation] *Absent exceptional circumstances, no such findings should be made.'* " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Given that victims are given an opportunity to present facts to the trial court to support requests for restitution, there is no compelling reason to deviate from the normal rule prohibiting reliance on facts not in the record.

The question of whether a victim may raise new issues on appeal requires more analysis. Generally speaking, the scope of the issues on appeal is determined by the appellant's opening brief; that is, the issues presented through reasoned argument in an appellant's opening brief are normally the only bases upon which we will reverse the judgment or order challenged on appeal. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9; *WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 155; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) In criminal appeals, Penal Code section 1252 provides, "On an appeal by a defendant, the appellate court shall, in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General." It appears that, despite its broad wording, Penal Code section 1252 only permits the People to seek review of errors to avoid a reversal. (See *People v. Braeseke* (1979) 25 Cal.3d 691, 701 [" 'the People may, on an appeal by the defendant and pursuant to the provisions of Penal Code section 1252, obtain review of allegedly erroneous rulings by the trial court in order to secure an affirmance of the judgment of conviction' "]; see also *People v. Mendoza* (2011) 52 Cal.4th 1056, 1076–1077

17

[following *Braeseke* and stating "there is some merit to the contention that section 1252 should be subject to reasonable limitations"].) In any event, regardless of the scope of section 1252, when Marsy's Law was enacted, no provision was added to the Penal Code permitting *victims* to assert claims of error other than those raised by the appellant. (*Santos*, *supra*, 238 Cal.App.4th at p. 410 [presumption that voters are aware of existing laws].)

We also observe that a victim who presents an impact statement on appeal occupies a position somewhat analogous to that of an amicus curiae, except permission is required to file an amicus curiae brief (Cal. Rules of Court, Rule 8.882(d)), while a victim may submit an impact statement as a matter of right. An amicus curiae is "one (as a professional person or organization) that is not a party to a particular litigation but that is permitted by the court to advise it in respect to some matter of law that directly affects the case in question." (Merriam-Webster's Collegiate Dictionary (10th ed. 2001) p. 37.) "Amicus curiae presentations assist the court by broadening its perspective on the issues raised by the parties. Among other services, they facilitate informed judicial consideration of a wide variety of information and points of view that may bear on important legal questions." (See *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 405.) Similarly, a victim impact statement may assist a reviewing court by providing an informed perspective different than that of the parties, and by alerting the court to arguments or aspects of the record overlooked by the parties.

Courts generally do not consider new issues raised in amicus briefs. Instead, "[i]t is a general rule that an amicus curiae accepts a case as he or she finds it," and "[a]micus curiae may not 'launch out upon a juridical expedition of its own unrelated to the actual appellate record.' " (*California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274.) "California courts refuse to consider arguments raised by amicus curiae when those arguments are not presented in the trial court, and are not urged by the parties on appeal. ' "Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curie will not be considered." ' " (*Id.* at p. 1275; see also *Younger v. State of*

18

*California* (1982) 137 Cal.App.3d 806, 813 [" ' "[T]he rule is universally recognized that an appellate court will consider only those questions properly raised by the appealing parties." ' "]; accord, Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2015) ¶ 9:210.1.)  That practice promotes judicial efficiency and an orderly appellate process, and absent a compelling reason the same rule should apply to a victim impact statement presented on appeal.

In summary, normally an appellant determines the issues on appeal and normally this court will consider only evidence presented to the trial court.  As described previously, the victim's Statement in the present case attempts to insert at least one new issue on appeal (that the trial court failed to make an adequate award of interest) and it relies on facts not in the record.  The plain meaning of the phrase "to be heard" as used in Section 28 does not compel this court to consider the victim's new issues and facts.  That is particularly true given that we presume the voters were aware of the well-established rules of appellate procedure when they enacted Marsy's Law.  (*Santos*, *supra*, 238 Cal.App.4th at p. 410.)

3.      *Our Interpretation Provides the Victim Due Process With Respect to Her Right to be "Heard" in This Appeal*

As relevant here, the intent of Marsy's Law is to "provide victims 'due process' by affording them an opportunity to be heard in proceedings concerning the prosecution, punishment, and release of those who victimized them." (*Vicks*, *supra*, 56 Cal.4th at pp. 309–310.)  *Vicks* considered the rights granted to a victim by Section 28 to be "similar" to "an individual's due process liberty interest in being free from arbitrary adjudicative procedures." (*Vicks*, at p. 310.)  The court previously explained regarding such individual interests that, " ' "For government to dispose of a person's significant interests without offering him a chance to be heard is to risk treating him as a nonperson, an object, rather than a respected, participating citizen." [Citation.]  Thus, even in cases in which the decision-making procedure will not alter the outcome of governmental action, due process may nevertheless require that certain procedural protections be granted the individual in order to protect important dignitary values, or, in other words, "to ensure

19

that the method of interaction itself is fair in terms of what are perceived as minimum standards of political accountability—of modes of interaction which express a collective judgment that human beings are important in their own right, and that they must be treated with understanding, respect, and even compassion." ' " (*Ibid.*, quoting *People v. Ramirez* (1979) 25 Cal.3d 260, 267–268.) *Vicks* observed, "The same sentiments are evident in the provisions of Marsy's Law that seek to ensure that crime victims are treated with dignity." (*Vicks*, at p. 310.)

The record in the present case reflects that the victim provided a substantial amount of documentation in support of her restitution claim, her Statement acknowledges she worked with the prosecutor in crafting the claim, and she made a detailed oral presentation at the restitution hearing. (See *People v. Smith* (2011) 198 Cal.App.4th 415, 439 [victim "had the right to have her attorney appear at the restitution hearing and to be heard on the issue of restitution"].) We granted the victim permission to file her Statement before this court. This provided her the opportunity to provide her perspective on the issues on appeal, as determined by appellant, including by pointing out facts in the record or legal authorities or arguments that may have been overlooked by the respondent. These procedures protected the due process interests described in *Vicks*, *supra*, 56 Cal.4th at page 310, by ensuring the victim had the opportunity to articulate and provide evidentiary support for her restitution claim below and to be "heard" on appellant's challenge to the restitution award. Our interpretation of Section 28 provided the victim an "opportunity to be heard . . . 'at a meaningful time and in a meaningful manner.' " (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)

We acknowledge our interpretation of Section 28 means the victim's claims of error will remain unresolved. That is because, absent those circumstances where writ proceedings are appropriate, the mechanism by which claims of error are properly brought to this court's attention is through the filing of an appeal. In the present case, the victim did not attempt to appeal the trial court's restitution order, and there is no indication she asked the prosecutor to do so. We recognize there is some uncertainty

20

whether the victim would have had standing to appeal the restitution award, but we do not have occasion in the present case to decide that issue. (See *People v. Subramanyan* (2016) 246 Cal.App.4th Supp. 1 [no victim standing to appeal restitution order in misdemeanor case] (*Subramanyan*).) We also recognize that, by deciding that a victim may not present new issues in a victim impact statement, we may make more difficult the question of whether a victim has standing to appeal an adverse ruling, because a conclusion a victim does *not* have such standing might in some circumstances diminish a victim's right to enforce her rights under Marsy's Law.[7]

Nevertheless, that question—whether the voters intended to authorize independent appeals by victims—is not determinative in the present case. As explained above, the victim's Section 28, subdivision (b)(8) right to be heard in this proceeding is the right to be heard on the issues on appeal, which are framed by the appellant. If the voters intended to authorize victims to present their claims of error on appeal, it was through

_____

[7] If a victim does not have a right to appeal an inadequate restitution award, and the People decline to appeal, then the victim's claims of error may go unheard. Arguably, a victim has a right to appeal under Section 28, subdivision (c)(1), which states that "[a] victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim, may enforce the rights enumerated in subdivision (b) in any trial or appellate court with jurisdiction over the case as a matter of right." (See also § 28, subd. (f) [referring to the "enumerated rights provided in subdivision (b) that are personally enforceable by victims as provided in subdivision (c)"].) In *Subramanyan*, the Appellate Division for the Superior Court of Orange County relied on the prosecutor's responsibility for prosecuting criminal offenses in holding a victim did not have standing to appeal a restitution order in a misdemeanor case. (*Subramanyan*, *supra*, 246 Cal.App.4th Supp. 1 at p. 448.) The court concluded, "once the judgment was entered at the trial court, only the prosecutor, acting on behalf of the People, or the defendant could initiate the appeal. If such an appeal were initiated the victim could then participate pursuant to Marsy's Law." (*Subramanyan*, at p. 448.) The decision reflects a concern that permitting victims to file appeals in criminal cases would "invade the exclusive province of the district attorney's prosecutorial authority." (*People v. Smith* (2011) 198 Cal.App.4th 415, 440) Nevertheless, *Subramanyan* did not explain how its result was consistent with the language of Section 28, subdivision (c)(1) and did not explain how, consistent with due process, a victim could enforce the right to restitution without the ability to appeal an erroneous restitution award. Those issues, including any conflict between the rights given victims under Marsy's Law and the People's prosecutorial authority, are for future courts to address.

21

Section 28, subdivision (c)(1), and the mechanism of an independent appeal. There is no indication that in giving victims the right to be "heard" the voters intended to create an exception to the well-established rules of appellate procedure, and allow victims to assert their claims of error in the context of a defendant's appeal.

### 4. *Conclusion*

Section 28, subdivision (b)(8) plainly requires a court of appeal to grant a victim's request to file a victim impact statement addressing a defendant's appeal from a trial court's restitution award. However, because that right to be heard in an appeal does not require this court to permit a victim to present new facts or issues, and because nothing in the language of Section 28 indicates the voters intended that a victim should be able to assert his or her separate claims of error when being heard regarding a defendant's appeal, the normal rules of appellate procedure apply to such a victim impact statement. Such procedural rules governing appeals may be imposed on parties without violating due process and there is no basis to conclude the conclusion should be otherwise where a victim's interests are at stake. (See *San Bernardino Community Hospital v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 928, 936–937 ["The constitutional right to due process does not prohibit the enactment of reasonable rules of procedure or restrictions on evidence. . . . There is nothing fundamentally inequitable in requiring a party to comply with established procedural rules which are designed to improve the overall fairness and efficiency of an adjudicatory procedure."].) Thus, in deciding the present appeal, this court has not considered the new issues and facts presented in the victim's Statement.

## DISPOSITION

The trial court's orders are affirmed.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(A145945)

Superior Court of Contra Costa County, No. 05-130435-1, Hon. Clare M. Maier, Judge.

Sidney S. Hollar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Masha A. Dabiza and Sara Turner, Deputy Attorneys General, for Plaintiff and Respondent.