Filed 4/8/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| NABEEL SLAIEH, | |
| Petitioner, | E077534 |
| v. | (Super.Ct.No. SWD1701434) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| JOANNE SLAIEH, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate from an order of the Superior Court of Riverside County. Sean Lafferty, Judge. Petition granted.

Bartell, Hensel & Gressley, Donald J. Hensel, Donald J. Bartell and Lara J. Gressley for Petitioner.

No appearance for Respondent.

Westover Law Group and Andrew L. Westover for Real Party in Interest.

1

Article I, section 28 of the California Constitution, as amended by Proposition 9, the "Victims' Bill of Rights Act of 2008"—commonly known as Marsy's Law—provides a broad spectrum of rights to victims of crimes, including the right "[t]o refuse an interview, deposition, or discovery request by the defendant" in a criminal proceeding. (Cal. Const., art. I, § 28, subd. (b)(5).) The question we must answer in this writ proceeding is whether the right to refuse a deposition applies in a marriage dissolution action between two parties who are simultaneously involved in a pending criminal case.

In 2017, Joanne Slaieh filed a divorce action against her husband, Nabeel Slaieh. A few years later, while the action was still pending, Nabeel was arrested on allegations of stalking and making criminal threats against Joanne, resulting in the opening of a criminal case against him. When Nabeel subsequently sought to depose Joanne in the divorce action, Joanne objected, citing a victim's right under Marsy's Law to refuse being interviewed or deposed by the defendant. Nabeel responded by filing a motion to compel her deposition, arguing Marsy's Law applies to criminal proceedings only. After a hearing on the issue, the trial judge agreed with Joanne and denied Nabeel's motion to compel.

Nabeel filed a petition for writ of mandate asking us to vacate the trial judge's order and conclude the right to refuse a deposition contained in article I, section 28, subdivision (b)(5) of the California Constitution does not apply to a civil action like a marriage dissolution proceeding. He argues the text of Marsy's Law makes clear its protections apply in criminal proceedings only. We agree and therefore grant the petition.

2

# I

## FACTS

Joanne and Nabeel were married in 2014. They have one child together, a son who was born in 2010. In June 2017, Joanne filed for divorce. Her dissolution petition sought joint legal and physical custody of their son, child support, and spousal support.

Almost three years later, in March 2020, the Riverside County District Attorney's Office filed a felony complaint against Nabeel based on Joanne's allegations that he had been stalking her and making criminal threats. Based on the same allegations, Joanne obtained a civil restraining order against Nabeel in the dissolution proceeding.

Around the same time, Joanne and Nabeel began engaging in discovery in the dissolution proceeding, exchanging requests for information and responses. About a year later, in March 2021, after delays caused by the COVID-19 pandemic, Nabeel served Joanne with a notice of deposition in the dissolution proceeding. Joanne responded by objecting to the deposition under Code of Civil Procedure section 2025.410. Citing Marsy's Law, she argued her status as a victim in the unresolved criminal case permitted her to refuse to be deposed in the dissolution action. In response to Joanne's objection, Nabeel filed a request for an order compelling her deposition. He argued Marsy's Law applies in criminal actions only and that allowing Joanne to use its protections as a shield in a dissolution action she had initiated would violate his due process rights under the Fifth and Fourteenth Amendments.

On June 7, 2021, while the preliminary hearing in the criminal case was still pending, the trial judge in the dissolution proceeding, Riverside County Superior Court Judge Sean Lafferty, held a hearing on Nabeel's motion to compel. The judge concluded the deposition provision in Marsy's Law "obviously . . . applies to civil matters" because "depositions generally are not permitted in criminal cases" and "what is the utility of this right if there's already a protection in criminal matters?" Noting that the purpose of a deposition is to question the witness's credibility, the judge reasoned that if Nabeel couldn't question Joanne's credibility through a deposition in the pending criminal case, it wasn't fair that he could "be allowed [to do so] in a civil matter, given the rights that are at stake." The judge denied the motion, and Nabeel timely filed a petition for writ of mandate. We issued an order to show cause and ordered a stay in the divorce action pending our decision on the issue.

## II

## ANALYSIS

Nabeel's petition poses a question of first impression; until now, no appellate court has been asked to decide whether any of the victims' rights in Marsy's Law apply to civil proceedings. As we'll explain, we conclude the law clearly limits its protections to adult criminal and juvenile proceedings.

4

A.	*General Overview of Marsy's Law*

"The Victims' Bill of Rights Act of 2008, also known as Marsy's Law, was adopted by a voter initiative Proposition 9 in 2008. The measure was named after a young woman who was murdered in 1983; it sought to address a number of ways in which the criminal justice system inadequately protected the victims of crime." (*People v. Hannon* (2016) 5 Cal.App.5th 94, 99 (*Hannon*).)

According to Proposition 9's findings and declarations, throughout the prosecution and incarceration of Marsy's murderer, her family was "often treated as though they had no rights." (Prop. 9, reprinted at Historical Notes, 1E West's Ann. Cal. Const. (2012) foll. art. I, § 28, Findings ¶ 2.) Marsy's mother was shocked to see her daughter's murderer in the supermarket after he was (unbeknownst to her) released on bail, and later, she suffered a heart attack while fighting against his release during numerous parole hearings that took place only years after the imposition of his life sentence. (*Id.*, ¶¶ 7-8; see also *In re Vicks* (2013) 56 Cal.4th 274, 282 (*Vicks*) [discussing the background and purpose of Marsy's Law].)

Proposition 9's findings express a number of grievances regarding the criminal justice system's treatment of victims and their families, including "the failure to build adequate prisons and jails, the early release of inmates 'after serving as little as 10 percent of the sentences imposed' (citation), the pain caused victims' families by frequent parole hearings, the failure of the criminal justice system to give victims 'notice of important hearings in the prosecutions of their criminal wrongdoers, [and the] failure to

5

provide them with an opportunity to speak and participate.'" (*Vicks*, *supra*, 56 Cal.4th at p. 282.)

Proposition 9 contains two express purposes. It states: "It is the purpose of the People of the State of California in enacting this initiative measure to: 1. Provide victims with rights to justice and due process. 2. Invoke the rights of families of homicide victims to be spared the ordeal of prolonged and unnecessary suffering, and to stop the waste of millions of taxpayer dollars, by eliminating parole hearings in which there is no likelihood a murderer will be paroled, and to provide that a convicted murderer can receive a parole hearing no more frequently than every three years, and can be denied a follow-up parole hearing for as long as 15 years." (Prop. 9; Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, § 3, p. 129.)

To achieve these stated purposes, Proposition 9 contains both statutory amendments to the Penal Code (most of which relate to parole) and a constitutional amendment to article 1, section 28 of the California Constitution (hereafter "Section 28"). (*Vicks*, *supra*, 56 Cal.4th at p. 283.) Section 28, as amended by Proposition 9, "find[s] and declar[es]" that in order to "preserve and protect a victim's rights to justice and due process" it is "necessary that the laws of California *relating to the criminal justice process* be amended." (Cal. Const., art. I, § 28, subds. (a)(8) & (b), italics added.) To achieve this purpose, "Section 28, subdivision (b) lists 17 specific and expansive rights to which a victim is entitled." (*Hannon*, *supra*, 5 Cal.App.5th at p. 100.)

The specific provision at issue here—Section 28, subdivision (b)(5) (the "deposition provision")—is part of this list of 17 rights. It gives the victim the right to "refuse an interview, deposition, or discovery request by the defendant, the defendant's attorney, or any other person acting on behalf of the defendant, and to set reasonable conditions on the conduct of any such interview to which the victim consents." (Cal. Const., art. I, § 28, subd. (b)(5).)

B.      *Standard of Review*

We review a ruling on a motion to compel a deposition for abuse of discretion. In cases like this, where the ruling rests entirely on the interpretation of a constitutional provision, the judge commits an abuse of discretion by misconstruing the provision. (*Abbott Laboratories v. Superior Court of Orange County* (2020) 9 Cal.5th 642, 651.) Because the interpretation of constitutional provisions is a purely legal issue, our review is de novo, meaning we determine the provisions' meaning without deference to the judge's decision. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 ["where the propriety of a discovery sanction turns on statutory interpretation, we review the issue de novo, as a question of law"].)

Our task when interpreting constitutional provisions enacted by voter initiatives is to apply the provision's language to effectuate the electorate's intent. (*Estate of Casserley* (2018) 22 Cal.App.5th 824, 833.) Because the language of the initiative itself is the most reliable indicator of intent, we start there, "giving the words their ordinary meaning" and construing them in the context of the initiative's "overall . . . scheme." (*Hannon*, *supra*, 5

7

Cal.App.5th at p. 101.) If the words themselves are not ambiguous, the initiative's plain meaning governs. (*Ibid.*) "Where there is ambiguity in the language of the measure, '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.'" (*Ibid.*)

C.     *Marsy's Law Does Not Apply to Civil Proceedings*

Nabeel contends the trial judge misinterpreted Marsy's Law by concluding the deposition provision applies to civil proceedings. He argues the plain language of the deposition provision, specifically, and Marsy's Law, generally, convey the provision applies only to the criminal proceeding in which the protected individual is *the victim*. And, because Joanne is the *petitioner* in the divorce proceeding, he argues, the provision does not apply to her. We agree with Nabeel.

As we've seen, Marsy's Law, or Proposition 9, was enacted in response to a murder victim's family's experience with the criminal justice system. (*Vicks*, *supra*, 56 Cal.4th at p. 282.) The initiative expressly identifies its purpose as "provid[ing] victims with rights to justice and due process" especially with regard to the parole process. (Prop. 9; Voter Information Guide, Gen. Elec., *supra*, text of Prop. 9, § 3, p. 129.) At numerous places, the initiative makes clear that the list of rights it provides applies to a specific class of individuals—victims in the "criminal justice system" and their families. (Cal. Const., art. I, § 28, subds. (a)(1) & (3).)

Additionally, Section 28 explicitly states that it functions as an amendment to "the laws of California *relating to the criminal justice process*." (Cal. Const., art. I, § 28, subd.

8

(a)(8), italics added.) And finally, the vast majority of the 17 rights enumerated in Section 28, subdivision (b) include terms that are specific to criminal proceedings and do not apply in the context of civil cases—terms like "victim," "arrest," "criminal or juvenile justice process," "prosecuting agency," "sentence," "incarceration," and "parole." (Cal. Const., art. I, § 28, subd. (b)(1)-(17).)

We find it significant there is no reference, explicit or implied, to civil proceedings anywhere in Section 28 or in Proposition 9 as a whole. Given the comprehensive nature of Marsy's Law, we conclude the omission was deliberate and the electorate did not intend any of the 17 enumerated rights to apply in a civil setting. (See, e.g., *Barnhart v. Peabody Coal Co.* (2003) 537 U.S. 149, 168 [when a law extensively covers a particular topic, it is reasonable to infer "that items not mentioned were excluded by deliberate choice, not inadvertence"].)

In concluding otherwise, the trial judge reasoned that the rule against surplusage required him to apply the deposition provision to civil proceedings. But the rule against surplusage has no place in the analysis because depositions *are* permitted in criminal cases under certain circumstances. (Pen. Code, § 1335.) As such, the deposition provision is not redundant; it provides victims a protection not afforded to other witnesses in a criminal proceeding. And in any event, the rule, like all interpretive canons, does not override the plain language of the statute and should be used only if it results in a reasonable interpretation. (*Marx v. General Revenue Corp.* (2013) 568 U.S. 371, 385.) As

9

Marsy's Law contains no reference to civil proceedings, we cannot say the judge's interpretation was reasonable.

In her answer to Nabeel's writ petition, Joanne proposes a different reason for concluding the deposition provision applies to civil proceedings. She points to the enforcement provision of Section 28, which states: "A victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim, may enforce the rights enumerated in subdivision (b) in any trial or appellate court with jurisdiction over the case as a matter of right." (Cal. Const., art. I, § 28, subd. (c)(1).) She argues the reference to "*any* trial or appellate court" means the electorate intended for victims to be able to enforce Section 28's rights not only in criminal courts, but also in civil and family law courts as well. But the provision doesn't actually say a victim may enforce the rights in *any court*. It says a victim may enforce the rights "in any trial or appellate court with jurisdiction over *the case*," and, in this context, "the case" obviously means the *criminal proceeding* involving the victim and the defendant. (*Ibid.*, italics added.)

When interpreting a voter initiative like Proposition 9, we presume the voters were aware of the laws existing at the time they enacted the measure. (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 410.) Additionally, "'"every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect."'" (*People v. Watkins* (1996) 45 Cal.App.4th 485, 490.) Here, the principle that a party to a civil action has a right to depose any adverse party in the action

10

is both fundamental to our legal system and longstanding, and we see no indication in Marsy's Law that the voters intended to alter it. (Code Civ. Proc., § 2025.010.) Thus, although we recognize we should, as a general matter, afford Marsy's Law "a broad interpretation protective of victims' rights" (*Santos*, at p. 418), we decline to interpret the law to exceed the boundaries clearly laid out by the electorate. While Section 28 protects Joanne from being deposed or interviewed by Nabeel in the pending criminal case, it does not protect her from being deposed by him in their divorce action, where both parties are entitled to discovery on disputed issues that fall outside the realm of criminal justice—matters of community property, child and spousal support, custody, and visitation.

## III

## DISPOSITION

Let a petition for writ of mandate issue directing respondent superior court to vacate its order denying Nabeel's motion to compel Joanne's deposition. The stay we ordered on September 23, 2021 and modified on October 5, 2021 shall expire when this opinion becomes final. Joanne shall bear Nabeel's costs.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

11