Filed 12/5/25  Aparicio v. Workers' Compensation Appeals Bd. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| TEOFILO APARICIO,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, KING FISH, INC., et al.,<br><br>　　　　Respondents. | B343586<br><br>(W.C.A.B. Nos. ADJ8471459, ADJ10571336) |

Petition for a writ of review from a decision of the Workers' Compensation Appeals Board.  Annulled and remanded.

Solov & Teitell and Karen Phung for Petitioner.

Allison J. Fairchild for Respondent Workers' Compensation Appeals Board.

Kirk, Myers, Palta & Izurieta, Jeffrey Myers and Kirk Mori for Respondents King Fish, Inc. and Liberty Mutual Insurance Company.

Law Offices of Bradford & Barthel and Louis A. Larres for Respondents King Fish, Inc. and American Casualty Company of Reading, Pennsylvania.

_____

The question presented in this matter is whether the decision of the Workers' Compensation Appeals Board (Board) finding that Teofilo Aparicio's stroke did not arise out of and occur in the course of his employment is supported by substantial evidence. The record reveals that the medical evaluators were not provided with witness statements that were more contemporaneous with the stroke and inconsistent with testimony given at trial. Because Aparicio is incapacitated and cannot recount the events himself, these contemporaneous statements were necessary for an adequate medical evaluation. Without them, the medical opinions fail to constitute substantial evidence to support the Board's determination.

Recognizing this evidentiary gap, the Board itself requested annulment and remand for further development of the record. Despite objections from the employer's insurers, we grant the petition. We annul the Board's decision and remand for further development of the record.

Undesignated statutory references are to the Labor Code.

**Factual and Procedural Background**

Teofilo Aparicio had a stroke on Saturday, November 19, 2011 while he was working as a kitchen helper at King Fish, a restaurant and market. Aparicio was deemed incompetent as a result of the stroke and his wife, Maria Vasquez, was appointed guardian ad litem and trustee.

*Vasquez's Testimony*

As Aparicio could not provide information regarding the events of that day, Vasquez provided her version of events. Vasquez dropped Aparicio off at work that morning and everything was normal. One of Aparicio's coworkers, "Pita," called Vasquez to tell her that Aparicio was taken to the hospital by ambulance. Vasquez went to the restaurant to pick up Aparicio's keys and cell phone and talked to Pita, who told Vasquez where Aparicio was taken. Pita told Vasquez that Aparicio complained of a headache and fainted. Pita told Vasquez that she suggested that an ambulance be called because Aparicio had been sitting for two hours.

Aparicio had surgery for the stroke. He remained at the hospital for two months and then was transferred to a convalescent home.

*Employer Witness Testimony*

The owner of King Fish, Jon Kagawa, testified before the workers' compensation judge (WCJ) that he called 911 about five to seven minutes after Aparicio was placed in a chair and that the ambulance arrived approximately five minutes later. Kagawa confirmed that he gave two earlier statements. Kagawa did not remember when the first statement was taken but the second statement was taken a few months prior to trial which took place on July 23, 2019. According to Kagawa's second statement, Aparicio's fall occurred at approximately 8:00 a.m. prior to the store's opening at 9:00 a.m. Kagawa testified that the second statement was taken seven years after the incident and he may have made a mistake on the times. During Kagawa's testimony, Aparicio's counsel demanded the actual witness statements and the WCJ ordered defendant to provide the parties

with the recorded defense witness statements discussed in a November 19, 2018 investigation report.

Kagawa confirmed that Saturday morning was a day fish shipments were received. Aparicio assisted in unloading fish and would not lift anything over 50 pounds. However, Kagawa could not recall if there was a morning delivery on the day of Aparicio's stroke.[1]

Ramon Acosta, the supervisor, saw Aparicio fall to the ground and went to assist him, sitting him up on the floor. Acosta testified that Aparicio fell around 9:30 a.m. or 10:00 a.m. and had been at work for about three hours. Acosta testified that Kagawa spoke with Aparicio and called 911 about five minutes after the fall. When the paramedics arrived, Acosta stated that Aparicio was able to speak with the paramedics.

Acosta remembered that he possibly gave two statements. Acosta recalled his statement of October 15, 2018 and telling the interviewer that the incident took place before the store was open between 8:20 a.m. and 9:00 a.m. However, Acosta stated that he was confused because the store was already opened when the incident occurred. Acosta believed that the incident occurred at 10:00 a.m. Acosta also confirmed that his other statement in 2012 indicated that the incident occurred before 9:30 a.m., later corrected to be at 9:00 a.m. While those statements were taken closer in time to the incident, Acosta stated that he now

---

[1]    Although Kagawa did not recall if there was a fish delivery on the day of Aparicio's stroke at the time of trial, in an earlier statement, Kagawa confirmed that Aparicio "looked good, actually loaded, [he] believe[d] they had actually been in one of the trucks earlier in the day and was able to do everything and just without any warning just went down."

4

remembered that the incident occurred between 9:30 a.m. and 10:00 a.m.

Like Kagawa, Acosta confirmed that fish was delivered on Saturday mornings. Acosta also did not recall if there was a delivery the morning of Aparicio's stroke. However, if there was a delivery, two people would have unloaded the truck and used a dolly or a rolling cart. Acosta did not remember Aparicio unloading a delivery truck on the day of the incident.

*Medical Evidence*

Paul J. Grodan, M.D. was a qualified medical evaluator[2] in internal medicine and cardiovascular issues. Dr. Grodan noted that Aparicio had preexisting hypertension and a lack of appropriate treatment. Therefore, the predominant causation was nonindustrial. However, with reasonable medical probability, Dr. Grodan opined that the acute precipitating event with acute onset of headache at work (thus having an industrial nexus) and the neurologic residuals were related to occupational injury. Dr. Grodan opined that the hypertensive heart disease was entirely nonindustrial. However, Dr. Grodan deferred his final opinion "to review of coworker's testimony or statement, if available. According to one of the coworkers there was a 2-hour delay before calling 911. That would be, as Dr. Gorinstein indicated, a factor responsible for the very pessimistic outcome."

---

[2]    A qualified medical evaluation is performed by a qualified medical evaluator (QME), a medical specialist whose function is to resolve medical disputes in workers' compensation cases. (Lab. Code, § 4062.2, subd. (a).) If a party requests a three-member QME panel, each party may strike one name from the panel and the remaining QME serves as the medical evaluator. (*Id.*, subds. (b) & (c).)

While Dr. Grodan found no industrial nexus to hypertension, he stated that blood pressure could suddenly rise with a specific stimulus and therefore the work activity could not be ruled out. Dr. Grodan found industrial apportionment could not exceed 20 percent given that the hypertension was nonindustrial.

Dr. Grodan explained that Aparicio's severe complications arose from the approximately two-hour delay in calling the paramedics. Dr. Grodan stated that, had Aparicio received medical treatment within the first several hours, his residual deficit would have been substantially less. However, if the paramedics were called immediately, then the spontaneous occurrence caused by preexisting hypertensive disease would be considered nonindustrial unless there was something that instantaneously aggravated the hypertension, such as an altercation, reprimand, or being upset over something.

Israel Gorinstein, M.D., the QME in neurology, initially found industrial causation due to the delay in treatment. Dr. Gorinstein deferred to Dr. Grodan, the internal medicine specialist, to define the role of stress, physical or emotional, to development or to aggravation of hypertension.

After reviewing Dr. Grodan's evaluation, Dr. Gorinstein revised his apportionment opinion, agreeing that, given the uncertainty of the timing of events and onset of symptoms, 20 percent of the resulting permanent disability was apportioned to the industrial untimely medical care and 80 percent was apportioned to the nonindustrial preexisting untreated hypertension.

After review of trial testimony from Kagawa and Acosta, Dr. Gorinstein found no industrial causation based on Kagawa's

and Acosta's account of events. Specifically, Dr. Gorinstein observed that Vasquez was not present but Kagawa and Acosta were and indicated that paramedics were called immediately.

*The WCJ's Rulings*

The WCJ found that Aparicio did not sustain injury arising out of and occurring in the course of employment in the form of a stroke. The WCJ noted the conflict in the testimonies of Vasquez on the one hand and Kagawa and Acosta on the other, but observed that Aparicio did not present Pita, who called Vasquez, as a witness to bolster Vasquez's version of events.

Although Kagawa and Acosta testified consistently at trial, the WCJ stated that they were "unclear" because of their earlier statements regarding when Aparicio fainted and when 911 was called and aid was provided. The WCJ acknowledged the documentary evidence obtained from the fire department showed the time of the 911 call, the arrival, the change in Aparicio's condition upon paramedic evaluation, and transport to the hospital.

The WCJ concluded that Vasquez's testimony was largely hearsay and, though admissible, was not corroborated by any other evidence. Based on the documentary evidence of the fire department that Aparicio was able to communicate when the paramedics arrived, the WCJ further concluded that there was no delay between Aparicio's fall and the rendering of medical care.

Aparicio filed a petition for reconsideration arguing that he was entitled to any reasonable inference pursuant to the policy of liberal construction. The petition contended that a reasonable inference was that Aparicio was engaged in strenuous activity leading up to his stroke and fall (such as carrying items off a truck weighing up to 40 pounds) and that there was a delay by

7

the employer in providing medical attention given the contradictory prior witness statements by Kagawa and Acosta. In the alternative, the petition argued that further development of the record was necessary, given Dr. Grodan's statement that he would finalize his opinion upon review of witness statements, which were never provided to the doctor. The petition observed that Dr. Gorinstein was not provided those statements as well. The petition lastly claimed that the stroke should have been compensable by the fact that Aparicio suffered an idiopathic condition and fell while at work.

The WCJ recommended that reconsideration be denied.

The Board granted reconsideration and then issued an opinion and decision after reconsideration denying reconsideration and adopting and incorporating the WCJ report.

**Petition for a Writ of Review and Board Response**

Aparicio filed this timely petition for a writ of review.

King Fish filed an answer asserting that Aparicio's position was based in large part on hearsay testimony provided by Vasquez which was not corroborated.

The Board took the uncommon step to respond to the petition. The Board admitted that the record in the case, as it currently stood, lacked substantial evidence to support the decision and that the WCJ and Board should have ordered further development of the record to fully adjudicate the issues. The Board quoted to the WCJ's summary of testimony where it stated that Kagawa's and Acosta's testimony "became unclear" regarding the chronology of events. The Board noted that the WCJ excluded the prior inconsistent statements even though the WCJ had already permitted them to be used for the purpose of impeachment.

8

The Board also noted that Kagawa, Acosta, and another employee, Gladys Lopez, gave second statements to an investigation service.  These statements were ordered to be produced, but were not uploaded into the electronic system nor provided to the medical evaluators for review.  The Board therefore requested that the decision be annulled and the matter remanded to the Board for further proceedings to address the evidentiary issues and to ensure full development of the evidentiary record "in accordance with the due process rights of all parties."

The parties were provided an opportunity to respond to the Board's request for remand.  Both American Casualty Company of Reading, Pennsylvania and Peerless Indemnity Insurance Company, insurers for King Fish, filed objections to the Board's request for remand.  We granted writ of review.

**Analysis**

*Standard of Review*

When determining whether the Board's conclusion was supported by substantial evidence, the evidence must be considered in light of the entire record.  (§ 5952, subd. (d); *LeVesque v. Workmen's Comp. Appeals Bd.* (1970) 1 Cal.3d 627, 637.)  "Medical reports and opinions are not substantial evidence if they are known to be erroneous, or if they are based on facts no longer germane, on inadequate medical histories and examinations, or on incorrect legal theories."  (*Hegglin v. Workmen's Comp. Appeals Bd.* (1971) 4 Cal.3d 162, 169.)

*The Board's Decision is Not Supported by Substantial Medical Evidence*

The medical opinions here fail the substantial evidence test because the evaluators themselves identified missing evidence as

9

necessary for their analysis. Dr. Grodan deferred his final opinion "to review of coworker's testimony or statement, if available," and Dr. Gorinstein likewise noted that "more detailed and documented information is missing" regarding the events of the day. An opinion explicitly dependent on unavailable evidence cannot constitute substantial evidence under section 5952.

The Board adopted and incorporated the WCJ's report when it affirmed the WCJ's decision. The WCJ relied on the trial testimony of Kagawa and Acosta in conjunction with the paramedic report to conclude that there was no delay in calling 911. The WCJ disregarded Vasquez's testimony by finding it "somewhat unreliable since it is primarily based on hearsay." The WCJ also disregarded the allegedly prior inconsistent statements made by Kagawa and Acosta regarding when Aparicio fainted and when 911 was called.

The WCJ's report, which the Board adopted and incorporated, shows that the WCJ's decision was based on the fact that the paramedic report indicated that Aparicio was able to communicate when the paramedics arrived but became aphasic during his transport to the hospital. The WCJ then discussed the possibility of Aparicio unloading fish with another person and found that the testimony "hardly rose to the level warranting any type of a reasonable inference of what occurred." Thus, the WCJ concluded that Aparicio's "stroke was found to be non-industrial, the evidence that a 2 hours delay in the applicant receiving treatment is based on hearsay evidence and not supported by the evidence presented."

Nowhere in the medical evidence submitted with the petition does a medical provider indicate that the inability to speak would have occurred contemporaneously with the onset of

10

the stroke. Additionally absent in the record is a medical opinion that would preclude a fainting incident two hours prior to Aparicio becoming unable to speak and going into a comatose state. The WCJ's conclusion that there was no delay in medical treatment because Aparicio's aphasia occurred while he was with the paramedics is not supported by substantial medical evidence. Indeed, Dr. Gorinstein also indicated that the headache was the beginning of the stroke. Dr. Gorinstein also discussed the possibility of the progression of a "sentinel headache," which represented an early sign of brain hemorrhage, to the catastrophic illness suffered by Aparicio, demonstrating that the incident may have been progressing for some time before Aparicio could not speak.

The chronology of events in these allegedly inconsistent statements was necessary to determine whether the disability caused by the stroke was at least in part connected to the employment. As observed by the Board in its response to the petition, the prior statements provided by Kagawa, Acosta and Lopez, though mentioned throughout, were not in the record.

More importantly, those statements were never provided to the medical evaluators. Dr. Grodan's opinion was two-fold: (1) there was insufficient information to determine whether the stroke was caused by the employment, and (2) if there was a delay in medical aid, then the resulting disability was in part caused by the delay. As to his first opinion, Dr. Grodan expressly requested witness statements, reporting that the "final opinion will have to be deferred to review of coworker's testimony or statement, if available." The first opinion involved whether there was any event at work that may have caused his nonindustrial hypertension to rise, resulting in the stroke. Without witness

11

information, Dr. Grodan could not opine on the issue and, as the record reflects, Dr. Grodan was not provided any witness statements, even those of Kagawa and Acosta at trial.

As to his second opinion, Dr. Grodan found that, if there was no delay, then the stroke was not industrial. Dr. Grodan opined without reviewing any witness testimony, even those provided at trial, that if the paramedics were called immediately, there would be no industrial nexus unless there was an event that instantaneously aggravated the hypertension, such as an altercation, being reprimanded or being upset over something.[3]

Dr. Gorinstein also initially had no confirmation or description of events on the day of the accident when Aparicio arrived at work until the 911 call. Dr. Gorinstein stated that "[a]t this time more detailed and documented information is missing regarding any unusual severity of headache, pace of progression, timing of headache, any associated symptomatology such as speech abnormality or unilateral weakness or numbness, any evidence of taking medication for headaches, or any request by the patient for help," and he could not determine whether a lay person could determine that urgent medical help was necessary.

---

[3]     Dr. Grodan also testified that if Aparicio did some heavy lifting, blood pressure may be raised which could destabilize plaque in the artery in the brain and cause bleeding. Indeed, Kagawa's March 29, 2020 statement indicated that Aparicio did in fact load or unload a truck that day. The record does not contain a medical opinion as to whether unloading 40 to 50 pound boxes of fish would be "heavy" activity that could trigger a spike in blood pressure to initiate a stroke for a man in his seventies.

12

After these statements of uncertainty, Dr. Gorinstein issued his final opinion based only on the trial testimony provided by Kagawa and Acosta, where they both discussed the potential that their earlier statements may have been wrong. Dr. Gorinstein relied on Kagawa's and Acosta's testimony that there was no delay in calling 911 but he did not have the benefit of the more contemporaneous statements provided by Kagawa, Acosta and Lopez. Without review of the statements, both at trial and earlier, the medical opinions are based on an incomplete history and cannot constitute substantial medical evidence.

*The Board Had a Duty to Develop the Record*

When an injured worker is incapacitated and cannot provide his own account, contemporaneous witness statements become essential to accurate medical evaluation. Here, both medical evaluators explicitly identified missing witness information as necessary for their analysis, yet these statements—despite being in the employer's possession and ordered produced—were never provided to the medical evaluators.

The Board has requested annulment of its decision to further develop the record. The Board generally "may not leave undeveloped matters which its acquired specialized knowledge should identify as requiring further evidence." (*Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 404; *West v. Industrial Acc. Com.* (1947) 79 Cal.App.2d 711, 719 (*West*).) The Board's power to develop the record is appropriately exercised when there is insufficient medical evidence in the record upon which to base a determination. (*Tyler v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 389, 394–395 (*Tyler*).) "A medical opinion is not substantial evidence if it is based on an

13

inadequate history, speculation or guess." (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2007) 146 Cal.App.4th 1311, 1315.) "The principle of allowing full development of the evidentiary record to enable a complete adjudication of the issues is consistent with due process in connection with workers' compensation claims." (*Tyler*, *supra*, at p. 394.)

In *Tyler*, the appellate court held that the Board was empowered to direct that the record be developed to remedy an evidentiary gap in the record. (*Tyler*, *supra*, 56 Cal.App.4th at pp. 394–395.) The Board's power to order further development of the record has been repeatedly reaffirmed by the courts, including the Supreme Court. (*Lundberg v. Workmen's Comp. Appeals Bd.* (1968) 69 Cal.2d 436, 440; *King v. Workers' Comp. Appeals Bd.* (1991) 231 Cal.App.3d 1640, 1649; *West*, *supra*, 79 Cal.App.2d at p. 719.) One example of when "the Board may act to develop the record with new evidence" is "if, for example, it concludes that *neither* side has presented substantial evidence on which a decision could be based, and even that this principle may be appropriately applied in favor of the employee." (*San Bernardino Community Hospital v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 928, 937–938.)

In this matter, the medical reporting indicated that Dr. Grodan did not review any witness statements and Dr. Gorinstein did not review statements made by witnesses closer in time to Aparicio's stroke. These statements were requested by Dr. Grodan to determine whether there was any industrial causation for the stroke. Dr. Gorinstein deferred to Dr. Grodan as the internal medicine specialist as to whether the employment had a role in the development or aggravation of hypertension. These statements were in King Fish's possession and ordered

14

produced to the parties.  It is unclear whether production was made to Aparicio.  It is certain that these statements were not provided to the medical evaluators.  The omission of these more contemporaneous accounts of the events leading up to the fall and stroke demonstrates the inadequate history provided to the QMEs.  Given the WCJ's characterization of Kagawa's and Acosta's testimony as "unclear," the Board's decision is not supported by substantial medical evidence from either side and the Board had a duty to develop the record.

## DISPOSITION

The Board's opinion and decision after reconsideration is annulled and the matter is remanded to the Board for further development of the record.

WILEY, J.

We concur:

STRATTON, P. J.

VIRAMONTES, J.

15